Board of Taxation
No. 79-340

APPEAL OF THE TOWN OF PETERBOROUGH
(NEW HAMPSHIRE BOARD OF TAXATION)

May 5, 1980

*Blodgett, Makechnie, Runyon & Sweeney,* of Peterborough (*Walter H. Sweeney* orally), for Elizabeth J. B. Moore.

*Brighton, Fernald, Taft & Hampsey,* of Peterborough (*Silas Little III* orally), for the town of Peterborough.

KING, J.    This case is an appeal from a decision of the State of New Hampshire Board of Taxation brought pursuant to RSA 76:16-a V (Supp. 1979). At issue is the imposition of the land use

change tax, RSA 79-A:7 (Supp. 1979), sought by Elizabeth J. B. Moore on land previously taxed as managed forest land.

Moore is the owner of a parcel of land in Peterborough situated on both sides of the General James Miller Road. This is a class VI road which is unmaintained, closed and subject to gates and bars. In 1975, Moore placed the parcel into current use as managed forest land. She later sought and obtained subdivision approval of the parcel.

On February 14, 1979, Moore requested the selectmen of the town of Peterborough to determine the land use change tax on approximately forty acres which she was subdividing into twelve lots. After the selectmen advised her that the land use change tax would be assessed at the time each lot in the subdivision was sold as a building lot, Moore appealed to the board of taxation. Following a hearing, the board determined that the land use change tax was to be assessed as of September 1, 1978, the date the board found the land use change to have occurred. The town appeals.

The primary issue before us is the construction of RSA ch. 79-A (Supp. 1979), the current-use-taxation statute. Under RSA 79-A:7 I (Supp. 1979), "[l]and which has been classified as open space land on or after April 1, 1974 . . . shall be subject to a land use change tax when it is changed to a use which does not qualify for open space assessment." A change of use occurs when "[a]ctual construction begins on the site causing physical changes in the earth. . . ." RSA 79-A:7 IV(a); see Frost v. Town of Candia, 118 N.H. 923, 396 A.2d 336 (1978). Examples indicative of actual construction include building a road, installing electrical utilities, excavating and grading the site, or any other act consistent with the proposed construction of buildings on the site. RSA 79-A:7 IV(a).

In the instant case, the board of taxation found that numerous physical changes to the land were performed to enhance and further the development of the land for building lots. Evidence was presented to the board that physical changes to the land had indeed taken place in July or August 1978. These included road improvement, addition of fill, installation of a drainage system, commencement of electrical service, clearing of lots and the bulldozing of driveways.

■ ■ The town argues that the improvements were made largely to the General James Miller Road that services the

subdivision and, therefore, cannot be considered as physical changes to "[l]and which has been classified as open space . . ." as required by RSA 79-A:7 I. As a class VI road subject to gates and bars, it was not a "publicly approved street," RSA 238:2, and the town had no obligation to maintain the road or be liable for damages incurred in its use. RSA 238:6. In order to gain access to the lots and as a condition of subdivision approval, however, the road had to be improved. The road was expanded from a narrow dirt road to a highway over fifty feet in width with culverts. Although we conclude that improvements to a road not in current use may not necessarily constitute a change in the use of abutting land, the major change in the road itself is evidence of the change in the use of that abutting land. Improvements to the road, however, were not the only physical changes for the board to consider. Numerous other improvements, such as lot clearing and driveway bulldozing, were made to the abutting forty-acre parcel. These activities were performed to facilitate the development of the land for building lots and were not intended to increase its value as forest land. Moreover, they clearly indicate a change in use from open space to residential construction.

■ The town next argues that the board of taxation's decision reveals sufficient confusion of the facts to constitute grounds for reversal as a matter of law. The town claims that the board was confused about the facts because it held that the change in use occurred in September 1978 although subdivision approval was not granted until June 1979. As recognized by the board's order upon the town's request for clarification, the physical changes worked upon the land in July and August 1978 were made in anticipation of favorable action by the town's planning board on the pending request for subdivision approval. Although we conclude that the board of taxation's opinion was not confused as a matter of law, we caution those concerned that commencement of road construction and any other acts which alter the natural state of the land is prohibited unless the subdivision plan has first been submitted and approved. *See* RSA 149-E:3 IX.

■ If a person seeks to subdivide land in current use, he should first receive subdivision approval before he changes the land use. Because land use change tax is computed when the change occurs, the tax would therefore be assessed after subdivision approval. In the instant case, however, the tax must be assessed before

subdivision approval only because the change occurred before the approval.

The town also argues that the board erred when it ruled that the selectmen could not consider the sale price of lots to determine the change-of-use tax to be assessed. Essentially, the town contends that the sole indicator of value is the price someone is willing to pay for a finished lot, even if the lot is finished many months or years after the physical changes occur.

■ The town misstates the board's decision. The board ruled that "the use of sales price *alone* as the *sole* indicator of 'full and true value' in the imposition of a land use change tax is contrary to fact and law." (Emphasis added.) It did not rule that selectmen could not consider actual sale prices as one factor in determining the value of the whole tract at the time the change-of-use tax is to be assessed.

■ In determining value for tax purposes, " '[u]nless the statute requires the use of specific matters as exclusive measures for its determination, consideration is to be given to all relevant factors.' " *Eltra Corporation v. Town of Hopkinton*, 119 N.H. 907, 409 A.2d 1145, 1149 (1979), *citing Brock v. Farmington*, 98 N.H. 275, 277, 98 A.2d 162, 163 (1953). In computing the land use change tax, the selectmen are only prohibited from considering "open space assessed value . . . or any equalized factor used by the municipality. . . ." RSA 79-A:7 I (Supp. 1979). Otherwise, the selectmen "shall receive . . . *all* [other] evidence . . ." when making that determination. RSA 75:1 (Supp. 1979).

■ Land that has been classified as open space land is subject to the land use change tax when its use is changed. RSA 79-A:7 (Supp. 1979). The intent of the statute is to encourage the preservation of open space by allowing such land to be taxed at a reduced rate. RSA 79-A:1 (Supp. 1979); *Blue Mountain Forest Ass'n v. Town of Croydon*, 117 N.H. 365, 376, 373 A.2d 1313, 1319-20 (1977). The ten percent tax allows the town to recapture some of the taxes it would have received had the land not been in the lower open space tax category. The purpose was not to permit the town to wait a considerable time after the use was changed to tax the lots whenever they are sold at a greatly appreciated rate. We therefore hold that the value of the property must be assessed as of the time the change in use occurred. In the instant case, the board of taxation found the change to have occurred on September 1,

1978. At that time, there were no finished lots. The selectmen were therefore obliged to appraise Moore's entire forty-acre tract as of that time.

*Appeal dismissed.*

All concurred.