270

## Opinion of the Justices
### (Current Use Reimbursement Program)

June 14, 1993

The following Resolution No. 20, as amended, requesting an opinion of the justices, was adopted by the house on March 11, 1993, and filed with the supreme court on March 16, 1993:

"Whereas, there is pending in the House, HB 570-FN-LOCAL, 'An act imposing a land use change penalty assessment for land which changes use more than once in a 10-year period and distributing continually appropriated penalty assessments to municipalities which have large acreages of land in current use;' and

"Whereas, an amendment has been proposed to HB 570-FN-LOCAL (document #1576B); and

"Whereas, HB 570-FN-LOCAL, as amended, would create a land use penalty assessment for land which changed from a qualifying use within 10 years of acquisition or enrollment; and

"Whereas, HB 570-FN-LOCAL, as amended, would require that the penalty assessment be paid by the landowner at the same time that the land use tax is paid; and

"Whereas, HB 570-FN-LOCAL, as amended, would require that municipalities pay the penalty assessments received to the department of revenue administration; and

"Whereas, HB 570-FN-LOCAL, as amended, would require that the department of revenue administration distribute on an annual basis such penalty assessment funds to municipalities which have more than 50 percent of their total, taxable private land area in current use, such distribution to be made on a per acre basis; and

"Whereas, questions have arisen as to the constitutionality of certain provisions of the bill; and

"Whereas, it is important that the question of constitutionality of said provisions should be settled in advance of its enactment; now, therefore, be it

"Resolved by the House of Representatives:

"That the Justices of the Supreme Court be respectfully requested to give their opinion on the following questions of law:

1. Does assessing a penalty in addition to the land use change tax for a change in use which occurs within 10 years of the date the property is placed into current use impermissably [sic] classify taxpayers in violation of Article 12, Part I and Article 5, Part II of the New Hampshire Constitution or deprive persons of equal protection of the laws under Articles 1 and 12, Part I, of the New Hampshire Constitution?

2. Does assessing a penalty at a different rate based upon the length of time the land has been in current use impermissably [sic] classify taxpayers in violation of Article 12, Part I and Article 5, Part II of the New Hampshire Constitution or deprive persons of equal protection of the laws under Articles 1 and 12, Part I of the New Hampshire Constitution?

3. Does either the payment of the penalty assessments to the state or the state redistribution of the penalty assessments to municipalities, which may not have paid any penalty assessment, violate Article 12, Part I and Article 5, Part II of the New Hampshire Constitution?

4. Does either an increase in the rate of land use change tax or the imposition of a penalty for a land use change on land already in current use violate the constitutional prohibition against retrospective laws set forth in Article 23, Part I of the New Hampshire Constitution?

That the clerk of the house of representatives transmit a copy of this resolution along with a copy of HB 570-FN-LOCAL and the amendment to HB 570-FN-LOCAL (document #1576B) to the Justices of the New Hampshire Supreme Court."

The following response is respectfully returned:

*To the Honorable House of Representatives:*

The undersigned justices of the supreme court now submit the following replies to your questions of March 11, 1993. Following our receipt of your resolution on March 16, 1993, we invited interested parties to file memoranda with the court on or before April 19, 1993.

HB 570-FN-LOCAL (the bill) proposes to amend RSA chapter 79-A (1991 & Supp. 1992) by inserting after section 7 a new section to read:

"79-A:7-a Land Use Change Penalty Assessment.

I. At the same time as an owner pays the land use change tax pursuant to RSA 79-A:7, I, the owner shall pay an additional penalty assessment for land which changed from a qualifying use to a non-qualifying use under RSA 79-A:7 within the first 10 years of acquisition of ownership or enrollment in the program. The amount of penalty assessment paid shall be determined as follows:

(a) If the land has been in current use for up to 2 years, 5 percent of its value as determined under RSA 79-A:7, I.

(b) If the land has been in current use for 2 or more years but less than 4 years, 4 percent of its value as determined under RSA 79-A:7, I.

(c) If the land has been in current use for 4 or more years but less than 6 years, 3 percent of its value as determined under RSA 79-A:7, I.

(d) If the land has been in current use for 6 or more years but less than 8 years, 2 percent of its value as determined under RSA 79-A:7, I.

(e) If the land has been in current use for 8 or more years but less than 10 years, one percent of its value as determined under RSA 79-A:7, I.

II. There is established a current use reimbursement fund. Any penalty assessment received by the municipality under this section shall be paid to the department of revenue administration within 30 days of receipt by the municipality and deposited into the current use reimbursement fund. The current use reimbursement fund shall be continually appropriated to the department of revenue administration. On July 1 of each year, the department of revenue administration shall distribute all money collected in the prior fiscal year which is in the current use reimbursement fund to all municipalities which have more than 50 percent of their total taxable, private land area in current use on a per acre basis.

III. Whenever the land use change tax is abated by the municipality, the department of revenue administration shall repay the portion of any penalty assessment paid by the landowner which is attributable to the abated tax from the current use reimbursement fund.

IV. The commissioner of revenue administration shall adopt rules, pursuant to RSA 541-A, regarding forms and other information necessary to implement the provisions of this section."

■ Your first question asks whether "assessing a penalty in addition to the land use change tax for a change in use which occurs within 10 years of the date the property is placed into current use impermissably [*sic*] classif[ies] taxpayers in violation of Article 12, Part I and Article 5, Part II of the New Hampshire Constitution or deprive[s] persons of equal protection of the laws under Articles 1 and 12, Part I, of the New Hampshire Constitution." This question is answered in the negative.

■■ We note that although the bill uses the term "penalty assessment," the proposed charge is a tax. "A tax is an enforced contribution to raise revenue and not to reimburse the state for special services rendered to a given party." *Opinion of the Justices*, 117 N.H. 749, 756, 379 A.2d 782, 786 (1977). Accordingly, we base our analysis of the bill on this premise. In addition, we assume, without deciding, that the land use change tax set out in RSA 79-A:7 is constitutional.

■ The legislature has wide discretion with respect to classification of taxable property. *See Opinion of the Justices*, 115 N.H. 306, 308, 339 A.2d 450, 451 (1975). If there is a just reason for the classification of taxable property, *see Opinion of the Justices*, 112 N.H. 32, 34, 287 A.2d 756, 757 (1972), and "the proposed selection is not arbitrarily made or for the sole purpose of preferring some taxpayers to others it will be upheld." *Opinion of the Justices*, 97 N.H. 543, 544, 81 A.2d 851, 852 (1951).

■ RSA chapter 79-A, the current use taxation statute, "was enacted to promote the preservation of open land in the State by allowing qualifying land to be taxed at a reduced rate based on its current use value as opposed to the value of a more extensive use." *Dana Patterson, Inc. v. Town of Merrimack*, 130 N.H. 353, 355, 540 A.2d 1225, 1226 (1988); *see Frost v. Town of Candia*, 118 N.H. 923, 924, 396 A.2d 336, 336 (1978) (statute encourages preservation of open space by removing pressure of taxes at higher rates). An additional intent of the statute is to allow a town with land in current use to "recapture some of the taxes it would have received had the land not been in the lower open space tax category." *Appeal of Town of Peterborough*, 120 N.H. 325, 329, 414 A.2d 1292, 1295 (1980).

Recognition of the need for a special effort to preserve open space demonstrates a just reason for the legislature's creation of a class of taxpayers from whom an additional penalty is required when the land no longer qualifies for the special tax treatment. It is reasonable for the legislature to determine that property applied as current use for less than ten years does not fulfill the purpose of the statute. The penalty is a part of the legislative scheme, operating as an added sanction to discourage premature conversion of open land to other uses, and is tied to the value of the land. These facts support a finding that the penalty has just reason, is not arbitrarily made, and thus is constitutional.

 Your first question asks also whether such classification violates the equal protection clause of the New Hampshire Constitution. Under our State Constitution, "equal protection analysis of statutes alleged to have had an adverse economic effect, absent a suspect classification, usually does not require application of the strict scrutiny standard." *Boehner v. State*, 122 N.H. 79, 83, 441 A.2d 1146, 1148 (1982). Rather, economic classifications are typically subject to the rational basis test. *See Petition of State Employees' Assoc. & Goulette*, 129 N.H. 536, 540, 529 A.2d 968, 971 (1987); *Opinion of the Justices*, 117 N.H. 749, 758, 379 A.2d 782, 788 (1977). The equal protection question therefore is whether a rational basis exists for imposing a penalty in addition to the land use change tax.

 As indicated above, the conservation, protection, and promotion of the State's natural resources are "within the ambit of public welfare" and therefore "the taxing power may be used to aid that public purpose." *Opinion of the Justices*, 99 N.H. 532, 534, 114 A.2d 327, 328 (1955). Land applied as current use for a period of less than ten years does not satisfy the goal of conservation to the extent realized when land is held in current use for longer periods of time. The classification of property for tax purposes under the proposed legislation has a rational basis and is rationally related to a valid public purpose.

 Your second question asks whether "assessing a penalty at a different rate based upon the length of time the land has been in current use impermissably [*sic*] classif[ies] taxpayers in violation of Article 12, Part I and Article 5, Part II of the New Hampshire Constitution or deprive[s] persons of equal protection of the laws under Articles 1 and 12, Part I of the New Hampshire Constitution." This question is answered in the negative.

As discussed above, it is reasonable to assume that the goal of preserving open space is increasingly accomplished the longer land is committed to such use. Affording property owners who continue to maintain their land in current use increased exemptions from the penalty assessment appears reasonable on its face and therefore provides just reason for the distinction. *See Opinion of the Justices*, 115 N.H. 228, 231, 338 A.2d 553, 555–56 (1975) (affording increased tax exemptions for resident owners in advanced age brackets supported by just reason that average earning power diminishes with age). The penalty assessment applied to landowners whose land becomes disqualified for current use within ten years of enrollment "would include a distinctive class of property, would be imposed upon a certain event and would apply to all similarly situated." *Opinion of the Justices*, 84 N.H. 559, 575, 149 A. 321, 329 (1930). For these reasons, tying the rate of the penalty to the length of time the land is in current use is reasonable. *Id.* at 569, 149 A. at 326 (for purposes of taxation property may be classified with reference to its kind or its use provided there is a reasonable ground of demarcation).

Your second question asks also whether such a provision violates the State Constitution's guarantee of equal protection. The answer turns on the existence of a rational basis for the classification. *Petition of State Employees' Assoc. & Goulette*, 129 N.H. at 540, 529 A.2d at 971. Equal protection permits classifications that are reasonable and not arbitrary and have a rational relation to the public purpose sought to be achieved by the legislation involved. *See State v. Amyot*, 119 N.H. 671, 673, 407 A.2d 812, 813 (1979). For the reasons stated in the first part of our answer to your second question, we conclude that the classification is not unreasonable or arbitrary.

Your third question asks whether "either the payment of the penalty assessments to the state or the state redistribution of the penalty assessments to municipalities, which may not have paid any penalty assessment, violate[s] Article 12, Part I and Article 5, Part II of the New Hampshire Constitution." This question is answered in the negative.

"The power to distribute the public burden, or the public revenue . . . is, in its nature, purely legislative." *Keene v. Roxbury*, 81 N.H. 332, 337, 126 A. 7, 11 (1924) (quotation omitted). "[S]tate aid to relieve the burdens put upon some towns and not upon others, or put upon towns in differing degree or amount, may be granted by the legislature." *Opinion of the Justices*, 84 N.H. at 580, 149 A. at 332.

While this principle is limited by the constitutional requirement that the "legislature cannot arbitrarily provide that taxpayers in one district shall contribute to the support of a public enterprise which is wholly for the benefit of another district," *Keene v. Roxbury*, 81 N.H. at 335, 126 A. at 10, "when there are overlapping, common or intermingled rights or benefits, it is within the legislative power to make a reasonable division of the burden." *Id.*

The basis for the distribution proposed in the bill is the fact that more than 50% of the total, taxable private land of a municipality is in current use, and therefore generating less revenue to fund the town's governmental functions. Because the lower tax rate applied to land in current use is for the promotion of a state-wide interest, to wit, the preservation of open space, it follows that the State can aid those qualifying municipalities in the manner proposed in the bill.

██ Your fourth question asks whether "an increase in the rate of land use change tax or the imposition of a penalty for a land use change on land already in current use violate[s] the constitutional prohibition against retrospective laws set forth in Article 23, Part I of the New Hampshire Constitution." This question is answered in the affirmative.

██ ██ "[E]very statute, which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past" is a retrospective law. *Pepin v. Beaulieu*, 102 N.H. 84, 89, 151 A.2d 230, 235 (1959) (quotation omitted). "[T]he application of a taxing provision to a transaction that occurred before its enforceable date would be retrospective under article 23." *Cagan's, Inc. v. Dep't of Rev. Admin.*, 126 N.H. 239, 249, 490 A.2d 1354, 1361 (1985).

RSA 79-A:5, IV states: "Prior to July 1 each year, the assessing officials shall determine if previously classified lands have been reapplied or have undergone a change in use so that the land use change tax may be levied against lands changed in use, according to RSA 79-A:7." RSA 79-A:7, I, provides that "[l]and which has been classified as open space land and assessed at current use values on or after April 1, 1974 . . . shall be subject to a land use change tax when it is changed to a use which does not qualify for open space assessment." The statute is unclear whether a landowner who fails to reapply for current use, or who simply opts to pay taxes based on the property's full and fair value, but nonetheless does not apply the property to a

more intensive use, is required to pay the ten percent land use change tax presently assessed pursuant to RSA 79-A:7.

It appears, pursuant to the provisions quoted above, that the only mechanism for withdrawing from current use status is to change the use of the land to a nonqualifying one, as defined under RSA 79-A:7, and pay the ten percent tax. Based on this statutory scheme, the application of an increased land use change tax or a penalty on land already enrolled in current use would constitute an unconstitutional retrospective law. Clearly no constitutional issue would arise if the statutory scheme allowed for landowners to withdraw land enrolled in current use without additional cost prior to an increase in the tax or the imposition of an additional penalty. We express no opinion on the validity of a grandfathering provision, as to do so would be based on speculation.

 "[W]e have not undertaken to consider all the provisions of the bill in every detail to ascertain whether they may be objectionable. Lack . . . of information has rendered this impracticable." *Opinion of the Justices*, 118 N.H. 343, 346, 386 A.2d 1273, 1275 (1978) (quotations and citation omitted).

DAVID A. BROCK
WILLIAM F. BATCHELDER
WILLIAM R. JOHNSON

June 14, 1993

OPINION OF JUSTICES THAYER AND HORTON

Insofar as the majority opinion holds that an increase in the land use change tax, or the imposition of a penalty for a land use change on land that has been in current use for less than ten years violates part I, article 23 of the New Hampshire Constitution, we must dissent. The majority identifies the long-accepted definition of a retrospective law as a statute "which takes away or impairs vested rights, acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Woart v. Winnick*, 3 N.H. 473, 479 (1826). Cases decided under this definition focus either on analyzing whether a statute impairs a vested right, under the first half of the definition, or whether a statute imposes a new obligation or duty with respect to past transactions, under the second half of the definition.

Most cases that have been decided under article 23 use a vested rights analysis. The opinion of the majority of the justices implicitly concedes that landowners who have enrolled their land in the current use program do not have a vested right to any particular tax rate in that the majority uses a transactional analysis to reach the conclusion that the proposed amendments to RSA chapter 79-A are retrospective. *See Cagan's, Inc. v. Dep't of Rev. Admin.*, 126 N.H. 239, 249, 490 A.2d 1354, 1361 (1985) (tax on sales from vending machines effective Oct. 15 held retrospective if applied to sales transactions which occurred prior to Oct. 15).

Although a majority of this court apparently believe that the relevant transaction is a landowner's initial application to enroll their land in current use, the plain language of the statute itself militates against using the initial enrollment as the relevant transaction. The current language provides: "The land use change tax shall be due and payable by the owner at the time of the change in use . . . ." RSA 79-A:7, II (Supp. 1992). The proposed amendments do not alter the timing for payment of the tax, they merely alter the amount of the tax. It is only when the landowner exits the program that the tax is assessed. Accordingly, the relevant transaction, in determining whether the proposed amendments to RSA chapter 79-A violate article 23 of the New Hampshire Constitution, occurs when a landowner exits the current use program, not when a landowner first applies to have land assessed at current use values. The proposed amendments would become effective in July 1993 and would apply to transactions in which landowners change the use of their land after that time. Because the proposed amendments will be applied prospectively, there is no violation of part I, article 23 of the New Hampshire Constitution.

W. STEPHEN THAYER, III
SHERMAN D. HORTON, JR.

June 14, 1993

*Charles Niebling,* of Concord, filed a memorandum on behalf of the New Hampshire Timberland Owners Association.

*David Harrigan,* of Concord, filed a memorandum on behalf of the Society for the Protection of New Hampshire Forests.

*H. Bernard Waugh, Jr.,* of Concord, filed a memorandum on behalf of the New Hampshire Municipal Association, in support of negative answers to the questions presented.