Request of the House
No. 97-217

OPINION OF THE JUSTICES

(Municipal Tax Exemptions for Industrial Construction)

June 23, 1997

The following request of the house for an opinion of the justices was adopted on March 26, 1997, and filed with the supreme court on March 27, 1997:

"Whereas, there is presently pending before the House of Representatives HB 198-LOCAL, an act allowing municipalities to offer tax incentives to foster growth in new and existing industrial construction; and

"Whereas, section 2 of HB 198-LOCAL provides that a town or city may vote to adopt a new construction property tax exemption for industrial uses; and

"Whereas, section 2 of HB 198-LOCAL further provides that a new construction property tax exemption for industrial uses may run for a period of 3 to 5 years following new construction and that the exemption for all years shall cumulatively not exceed 200 percent of the increased assessed value; and

"Whereas, legislation proposing new tax exemptions should be scrutinized to determine its constitutionality; now, therefore, be it

"Resolved by the House of Representatives:

"That the Justices of the Supreme Court be respectfully requested to give their opinion on the following questions of law:

1. Is the classification of taxable property provided for in HB 198-LOCAL based on a reasonable distinction which promotes a proper object of public welfare and does not require any taxpayer to pay more than his or her fair share of the tax burden as required by part I, article 12 of the New Hampshire Constitution?

2. Do the provisions of HB 198-LOCAL which temporarily exempt certain real property from property taxes violate the constitutional requirements of uniformity and equality governing the assessment and collection of property taxes and the constitutional prohibition against authorizing gifts to corporations organized for profit, all required by part II, article 5 of the New Hampshire Constitution?

"That the clerk of the House of Representatives transmit copies of this resolution and copies of HB 198-LOCAL to the justices of the New Hampshire Supreme Court."

The following response is respectfully returned:

*To the Honorable House:*

The undersigned justices of the supreme court now submit the following replies to your questions of March 26, 1997. Following our receipt of your resolution on March 27, 1997, we invited interested parties to file memoranda with the court on or before April 28, 1997.

HB 198-LOCAL (the bill) proposes to amend RSA chapter 72 (1991 & Supp. 1996) by inserting after section 72 a new subdivision to read:

Industrial Construction Exemption

72:73 Definitions. In this subdivision:

I. 'Industrial uses' shall include all manufacturing, production, assembling, warehousing or processing of goods or materials for sale or distribution, research and development activities, or processing of waste materials.

II. A town or city adopting a tax exemption pursuant to RSA 72:74 may, in lieu of the definition in this section, adopt by reference the definition of similar terms as may be contained in that town or city's zoning ordinance.

72:74 Property Tax Exemption. A town or city may, by vote of the local legislative body pursuant to RSA 72:75, adopt a new construction property tax exemption for industrial uses. The exemption shall be a specified percentage of the increase in assessed value attributable to construction of new structures, and additions, renovations or improvements to existing structures. The exemption may run for a period of 3 to 5 years following the new construction; provided, however, that the exemption for all years shall cumulatively not exceed 200 percent of the increased assessed value. Once adopted by the local legislative body, the percentage rate and duration of the exemption shall be granted uniformly within that municipality to all new construction for which a proper application is filed.

72:75 Procedure for Adoption. A municipality desiring to adopt the provisions of RSA 72:74 shall do so in the following manner:

I. In a town, the question shall be placed on the warrant of a special or annual town meeting, by the governing body or by petition pursuant to RSA 39:3, and shall be voted upon by official ballot if that town has adopted the official ballot for the election of officers. A public hearing shall be held at least 15 but not more than 60 days prior to the vote.

II. In a city, the legislative body may consider and act upon the question in accordance with its normal procedures for passage of resolutions, ordinances, and other legislation. In the alternative, the legislative body of a city may vote to place the question on the official ballot for any regular municipal election.

III. The vote shall specify the percentage of new assessed value to be exempted, the number of years duration of the exemption following new construction, and a reference to zoning use category definitions, if applicable. The exemption shall take effect in the tax year beginning April 1 following its adoption.

IV. A vote adopting RSA 72:74 shall remain in effect for at least 3 tax years. For subsequent years it may be rescinded or altered in the same manner as specified for adoption; provided, however, that for any application which has already been granted prior to such recision or alteration, the exemption shall continue to apply at the rate and for the duration in effect at the time it was granted.

72:76 Application for Exemption.

I. On or before March 1 following the date of notice of tax under RSA 72:1-d for any year for which the exemption is claimed, a person qualified for an exemption under RSA 72:74 shall file an application with the selectmen or assessors, on an application form prepared by them, signed by the applicant under penalty of perjury, which contains adequate information to demonstrate that the applicant is qualified for the exemption.

II. The selectmen or assessors shall notify the applicant of their decision on or before July 1 following the date of notice of tax under RSA 72:1-d. The decision shall specify the amount of the exemption, that it is effective beginning the prior April 1, and the number of years for which the exemption applies to qualified construction. The decision of the selectmen or assessors may be appealed in the manner set forth in RSA 72:34-a.

III. An owner may apply for the exemption prior to construction, but in no case more than 12 months before the beginning of the tax year for which the exemption is sought. In such cases the selectmen or assessors may anticipatorily grant the exemption, subject to adjustment when the actual increase in assessed value becomes known. If construction is partially complete on April 1 of any year, the exemption for that year shall be based on the increased assessed value attributable to the partial construction, but the duration of the exemption shall be adjusted such that the cumulative amount of exemptions received, based on the construction as completed, is proportional to that received by other eligible properties.

IV. The selectmen or assessors may request such additional or updated information as is necessary to determine eligibility. If they are satisfied that the applicant has willfully made any false statement, or has refused to provide information after such a request, they may refuse to grant the exemption.

V. If the municipality completes a revaluation during the period for which an exemption has been granted, the amount of the exemption shall be adjusted by the difference in equalization ratios applicable in the municipality before and after the revaluation.

The proposed bill contains a statement of intent that "[i]t is the purpose of this act to foster the economic development of the state by enabling municipalities to encourage new construction, rehabilitation and improvement of property for industrial use through the adoption of tax exemptions, to grant flexibility to the local legisla-

tive body in determining the amount and type of exemption to adopt, and to ensure that, once adopted, such exemptions shall be administered uniformly within that municipality, so as to avoid the constitutional risk of ad hoc or discriminatory tax benefits."

■ Your first question asks whether "the classification of taxable property provided for in [the bill] [is] based on a reasonable distinction which promotes a proper object of public welfare and does not require any taxpayer to pay more than his or her fair share of the tax burden as required by part I, article 12 of the New Hampshire Constitution." This question is answered in the affirmative.

Part I, article 12 of the State Constitution provides that "[e]very member of the community has a right to be protected by it, in the enjoyment of his life, liberty, and property; he is therefore bound to contribute his share in the expense of such protection, and to yield his personal service when necessary." "The legislature has wide discretion with respect to classification of taxable property. If there is a just reason for the classification of taxable property, and the proposed selection is not arbitrarily made or for the sole purpose of preferring some taxpayers to others it will be upheld." *Opinion of the Justices (Current Use Reimbursement Program)*, 137 N.H. 270, 275, 627 A.2d 92, 95 (1993) (citations and quotation omitted).

Likewise, "the [l]egislature may provide, by general laws, for exemption of certain classes of property from taxation." *Opinion of the Justices*, 101 N.H. 539, 540, 134 A.2d 278, 278 (1957) (quotation omitted); *see Opinion of the Justices*, 128 N.H. 1, 8, 509 A.2d 734, 740 (1986) (legislature has broad power to create exemptions from taxation on a uniform basis). "In the selective process of classifying certain property for taxation and exempting other property the Legislature has a wide discretion which will be sustained provided just reasons exist for the selection made." *Opinion of the Justices*, 95 N.H. 548, 550, 65 A.2d 700, 701 (1949) (quotation omitted); *see Smith v. N.H. Dept. of Revenue Admin.*, 141 N.H. 681, 687, 692 A.2d 486, 491 (1997). "The basic principle that all taxpayers shall share the public expense equally . . . is not violated by a legislative exemption of a certain class of property from taxation, in whole or in part, provided the exemption serves the general welfare." *Eltra Corp. v. Town of Hopkinton*, 119 N.H. 907, 912, 409 A.2d 1145, 1148 (1979); *see Young Women's Christian Ass'n v. Portsmouth*, 89 N.H. 40, 42, 192 A. 617, 618 (1937). "The classification must not be arbitrary, but must reasonably promote some proper object of public welfare or interest." *Eltra Corp.*, 119 N.H. at 912, 409 A.2d at 1148.

The stated purpose of the proposed exemption is "to foster the economic development of the state by enabling municipalities to encourage new construction, rehabilitation and improvement of property for industrial use" by granting tax exemptions for a limited period of time. The State and its citizens presumably receive direct benefits from tax exemptions for industrial construction by attracting new industries into the State and keeping existing industry here, thereby creating economic growth. Since all industrial uses that meet the statutory definition may qualify for limited tax exemptions, the bill does not improperly classify property. The legislature has determined that the public welfare would benefit from the encouragement of industrial construction in the State and that this may be accomplished through the proposed bill. The purpose of stimulating economic growth is "one properly within the legislature's discretion in acting for the welfare of the state." *Opinion of the Justices*, 87 N.H. 490, 491, 178 A. 125, 126 (1935). We conclude that there are just reasons for providing a limited tax exemption for industrial construction and that the proposed bill reveals the purpose of the legislature is to promote the public welfare.

■ Your second question asks whether "the provisions of [the bill] which temporarily exempt certain real property from property taxes violate the constitutional requirements of uniformity and equality governing the assessment and collection of property taxes and the constitutional prohibition against authorizing gifts to corporations organized for profit, all required by part II, article 5 of the New Hampshire Constitution." This question is answered in the negative.

■ Part II, article 5 of the State Constitution provides that "full power and authority are hereby given and granted to the said general court . . . to impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and residents within, the said State." The legislature may constitutionally delegate to cities and towns the authority to create tax exemptions. *See Opinion of the Justices*, 115 N.H. 228, 230, 338 A.2d 553, 555 (1975). "No unconstitutional delegation of authority results when the legislature establishes the terms of a general act, but leaves the determination of whether it shall have the force of law to the governing bodies of the localities to be affected or to the people themselves." *Id.* at 230-31, 338 A.2d at 555. Constitutionally mandated requirements for uniformity and equality of taxation would not be violated "should less than all cities and towns adopt the

optional exemptions provided by the bill, with a resulting uneven system of taxation." *Id.* at 231, 338 A.2d at 555 (quotation omitted). "[S]ince the property tax imposed would be uniform and equal within each taxing district, constitutional requirements would thus be met." *Id.* (quotation, ellipses, and brackets omitted); *see Opinion of the Justices*, 112 N.H. 32, 35, 287 A.2d 756, 758 (1972) (tax met requirement of uniformity and equality within taxing district).

Pursuant to the provisions of the proposed bill, once a town or city adopts a construction property tax exemption for industrial uses and specifies the percentage rate and duration of the exemption, the exemption "shall be granted uniformly within that municipality to all new construction for which a proper application is filed." The exemption would apply equally and uniformly within the taxing district, thereby satisfying constitutional requirements.

Part II, article 5 of the State Constitution further provides that "the general court shall not authorize any town to loan or give its money or credit directly or indirectly for the benefit of any corporation having for its object a dividend of profits or in any way aid the same by taking its stocks or bonds." While this provision is a limitation "upon legislative power to authorize gifts by towns to corporations organized for profit," *Opinion of the Justices*, 95 N.H. at 551, 65 A.2d at 701, it "does not extend to the authority of the legislature by its own act to provide a uniform exemption of state-wide application." *Id.; see Eyers Woolen Co. v. Gilsum*, 84 N.H. 1, 8, 146 A. 511, 515 (1929) (general exemption is part of state policy of taxation, special exemption is a favor granted to a particular party).

The bill before us provides for a tax exemption, not the expenditure of public funds for private purposes. The primary object of the bill is not to aid and benefit private persons for private ends, but, rather, to benefit the public at large by increasing the resources of the State and its taxable property through the establishment of new industries. *Cf. Eyers Woolen Co.*, 84 N.H. at 16-17, 146 A. at 519 (particular law applicable to one party only in his private capacity cannot be classified as general exemption). We accordingly answer your second question in the negative.

As we have stated in the past, "we cannot predict every issue that may be raised in an adversary setting if this bill should become law." *Opinion of the Justices*, 112 N.H. at 46, 288 A.2d at 700 (quotation omitted). The proposed legislation, however, "appears to us to be constitutional on its face." *Opinion of the Justices*, 111 N.H. 199, 205, 278 A.2d 357, 361 (1971).

DAVID A. BROCK

WILLIAM R. JOHNSON

W. STEPHEN THAYER, III

SHERMAN D. HORTON

JOHN T. BRODERICK

June 23, 1997

*Joseph S. Haas, Jr.*, of Ashland, submitted a memorandum on the questions.