Request of the House
No. 99-346

OPINION OF THE JUSTICES

(Municipal Tax Exemptions for Electric Utility Personal
Property)

December 7, 1999

The following resolution No. 12, requesting an opinion of the justices, was adopted by the house of representatives on June 9, 1999, and filed with the supreme court on June 10, 1999:

"Whereas, there is presently pending before the House of Representatives HB 536, as amended by document number 1999-1063h, authorizing municipalities to exempt from the local property tax personal property employed in the generation and production of electric power; and

"Whereas, section 2 of HB 536 as amended provides that the governing body of a town or city may make the determination to exempt from local property taxation so much of the equipment for the generation and production of electric power and for such a term of years as the governing body determines will attract new construction of electric generation facilities, retain existing electric generation facilities, or foster economic development; and

"Whereas, section 2 of HB 536 as amended further provides that the determination, including but not limited to the fair market value of the equipment exempted, the term of the exemption, any agreement for payment of taxes, and/or any agreement for payment in lieu of taxes, shall be subject to approval of the legislative body of the municipality; and

"Whereas, legislation proposing new tax exemptions should be scrutinized to determine its constitutionality; now, therefore, be it

"Resolved by the House of Representatives:

"That the Justices of the Supreme Court be respectfully requested to give their opinion on the following questions of law:

1. Do the provisions of HB 536 as amended, which exempt from local property taxes so much of the equipment for the generation and production of electric power and for such a term of years as may be determined by the municipality, violate constitutional requirements of uniformity and equality governing the assessment and collection of property taxes and the constitutional prohibition

against authorizing gifts to corporations organized for profit, as provided by part II, article 5 of the New Hampshire constitution?

2. Do the provisions of HB 536 as amended, which exempt from local property taxes so much of the equipment for the generation and production of electric power and for such a term of years as may be determined by the municipality, violate the constitutional provision that government is instituted for the common benefit, protection, and security, of the whole community, and not for the private interest or emolument of any one man, family, or class of men under part I, article 10 of the New Hampshire constitution?

3. Is the classification of taxable property provided for in HB 536 as amended based on a reasonable distinction which promotes a proper object of public welfare and does not require any taxpayer to pay more than his or her fair share of the tax burden as required by part I, article 12 of the New Hampshire constitution?

"That the clerk of the House of Representatives transmit copies of this resolution and copies of HB 536, as amended by document number 1999-1063h, to the justices of the New Hampshire supreme court."

The following response is respectfully returned:

*To the Honorable House:*

The undersigned justices of the supreme court now submit the following replies to your questions of June 9, 1999. Following our receipt of your questions, we invited interested parties to file memoranda with the court on or before August 16, 1999.

HB 536, as amended, proposes to amend RSA 72:8 (1991 & Supp. 1999) by inserting a paragraph heading "I" in front of the current provision and adding a new subdivision so that the statute reads as follows:

72:8 Electric Plants and Pipe Lines.

I. All structures, machinery, dynamos, apparatus, poles, wires, fixtures of all kinds and descriptions, and pipe lines employed in the generation, production, supply, distribution, transmission, or transportation of electric power or natural gas, crude petroleum and refined petroleum products or combinations thereof, shall be taxed as real estate in the town in which said property or any part of it is situated; provided that no electric power fixtures which would otherwise be taxed under this section shall be taxed under this

section if they are employed solely as an emergency source of electric power.

II.(a) A governing body of a municipality may exempt from taxation under this section any portion of the personal property employed in the generation and production of electric power that would otherwise be subject to taxation under paragraph I in accordance with this paragraph. If a municipality exempts any such property from taxation, the exemption shall apply to all owners of such property within the municipality.

(b) The governing body of each municipality shall make the determination to exempt from taxation so much of the equipment for the generation and production of electric power and for such a term of years as the governing body determines will attract new construction of electric generation facilities, retain existing electric generation facilities, or foster economic development.

(c) Such determination, including but not limited to the fair market value of the equipment exempted, the term of the exemption, any agreement for payment of taxes, and/or any agreement for payment in lieu of taxes, shall be subject to approval of the legislative body of the municipality.

(d) Any portion of personal property exempted under the provisions of this paragraph from taxation for a term of years shall be deemed subject to local property taxation for purposes of the utility property tax imposed by RSA 83-F on utility property as defined in RSA 83-F:1, V.

Further, the proposed bill contains a statement of purpose that

[i]n order to further the state's policy of promoting the development of a competitive electric supply market in New Hampshire and to give municipalities the ability to attract new electric generation facilities and retain existing generation facilities that have become subject to the economic pressures of a deregulated market, the general court believes that it is desirable to give municipalities the authority to exempt from taxation certain personal property that is used in the manufacture of electricity.

Thus, the essence of this bill is to allow a municipality to exempt from local property tax assessments certain property of the electric utilities located within its jurisdiction. The authority to grant an exemption, however, expires in July 2004. Further, utilities would

still be subject to a utility property tax assessed on the State-wide level. *See* Laws 1999, 303:3, :4.

Your first question asks whether the provisions of HB 536 "violate constitutional requirements of uniformity and equality governing the assessment and collection of property taxes and the constitutional prohibition against authorizing gifts to corporations organized for profit, as provided by part II, article 5 of the New Hampshire constitution?" We answer both parts of this question in the negative.

Part II, Article 5 endows the general court with the power

to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, ordinances, directions, and instructions . . . so as the same be not repugnant or contrary to this constitution, as they may judge for the benefit and welfare of this state, . . . and to impose and levy proportional and reasonable assessments, rates, and taxes, upon all the inhabitants of, and residents within, the said state; . . . provided that the general court shall not authorize any town to loan or give its money or credit directly or indirectly for the benefit of any corporation having for its object a dividend of profits.

Part II, Article 5 thus "requires that all taxes be proportionate and reasonable, equal in valuation and uniform in rate, and just." *Opinion of the Justices (Property Taxation of Tel. Poles)*, 142 N.H. 102, 107, 697 A.2d 125, 129 (1997) (quotation omitted). Although "exemptions necessarily result in a disproportionate tax burden on the remaining property in the taxing district," the legislature possesses broad discretion to select certain property for taxation while exempting other property. *Opinion of the Justices (School Financing)*, 142 N.H. 892, 900, 712 A.2d 1080, 1086 (1998). Exemptions are constitutional if they are supported by just reasons, "and thereby reasonably promote some proper object of public welfare or interest." *Id.* (quotation omitted).

We conclude that HB 536 is supported by just reasons and that the legislature has acted properly in promoting the public interest. The stated purpose of the legislation is to foster competition in the electric utility industry. Deregulation of this industry is a matter of great public and legislative concern, *see* RSA ch. 374-F (Supp. 1999), and the legislature has recognized competition and consumer choice as providing a "compelling reason to restructure the New Hampshire electric utility industry." RSA 374-F:1, I. HB 536 is tailored to

meet this end by providing for a tax exemption where competitive pressures and concerns for local economic growth warrant such an exemption. *Cf. Claremont School Dist. v. Governor*, 144 N.H. 210, 215, 744 A.2d 1107, 1111 (1999) (court will strike down legislation "when the means employed to effect a tax exemption failed to comport with the articulated justification"). Further, the bill authorizes municipalities to grant an exemption "for such a term of years as the governing body determines will . . . foster economic development." HB 536(2) (proposed RSA 72:8, II(b)). It is well-established that the legislature's discretion to act in furtherance of the general welfare includes fostering economic growth. *See, e.g., Opinion of the Justices (Mun. Tax Exemptions for Indus. Constr.)*, 142 N.H. 95, 100, 697 A.2d 120, 123 (1997). " [W]e leave matters of public policy to the legislature and do not concern ourselves with the wisdom and practicality of proposed legislation." *Opinion of the Justices (School Financing)*, 142 N.H. at 900, 712 A.2d at 1086 (quotation omitted). Because we conclude that the exemption is supported by just reasons, it does not violate the uniformity requirement of Part II, Article 5.

■■ The Towns of Bow and Newington assert that the bill is constitutionally deficient because utility property tax rates will vary from town to town depending on a utility's ability to convince a municipality to grant the exemption. Uniformity and equality are satisfied where the tax imposed is uniform and equal within each taxing district. *See Opinion of the Justices*, 115 N.H. 228, 231, 338 A.2d 553, 555 (1975). Encompassed within its broad taxation powers, the legislature has the authority to grant each town and municipality the power to choose whether to create a local tax exemption. *Opinion of the Justices (Mun. Tax Exemptions for Indus. Constr.)*, 142 N.H. at 100, 697 A.2d at 124.

> No unconstitutional delegation of authority results when the legislature establishes the terms of a general act, but leaves the determination of whether it shall have the force of law to the governing bodies of the localities to be affected or to the people themselves. Constitutionally mandated requirements for uniformity and equality of taxation would not be violated should less than all cities and towns adopt the optional exemptions provided by the bill, with a resulting uneven system of taxation.

*Id.* at 100-01, 697 A.2d at 124 (citation and quotations omitted). The terms of the bill mandate that "[i]f a municipality exempts any such

property from taxation, the exemption shall apply to all owners of such property within the municipality." HB 536(2) (proposed RSA 72:8, II(a)). Thus, the rate within each taxing district would be uniform for all utility property subject to the local property tax. Accordingly, the constitutional mandate of uniformity and equality is satisfied. *See, e.g., Opinion of the Justices (Mun. Tax Exemptions for Indus. Constr.)*, 142 N.H. at 101, 697 A.2d at 124 (tax exemption for construction of industrial uses satisfies uniformity where bill provides that once a municipality adopts the exemption, it must be applicable to all who qualify within the taxing district).

▆▆ Finally, question one inquires whether the bill violates "the constitutional provision against authorizing gifts to corporations organized for profit, as provided by part II, article 5 of the New Hampshire constitution?" It is suggested in some of the memoranda that despite the stated intent of the proposed statute, this legislation was intended to benefit only one utility, which plans to locate in New Hampshire, by giving it a competitive advantage over the established utilities in this State. "We cannot resolve such factual issues in rendering advisory opinions on legal questions . . . [and] [t]herefore confine our analysis to the facial validity of the bill[] . . . ." *Opinion of the Justices (Property Taxation of Tel. Poles)*, 142 N.H. at 107, 697 A.2d at 128 (citations omitted); *see Opinion of the Justices (School Financing)*, 142 N.H. at 898, 712 A.2d at 1084. Part II, Article 5 limits the "legislative power to authorize gifts by towns to corporations organized for profit. It does not extend to the authority of the Legislature by its own act to provide a uniform exemption." *Opinion of the Justices*, 95 N.H. 548, 551, 65 A.2d 700, 701 (1949); *see Opinion of the Justices (Mun. Tax Exemptions for Indus. Constr.)*, 142 N.H. at 101, 697 A.2d at 124. On its face, HB 536 makes the exemption available to all utility property currently located within the State in order to foster increased competition and local economic growth, and does not authorize a direct loan or grant of public funds to a private corporation solely for that corporation's private profit. Therefore, we likewise answer the remainder of question one in the negative.

Question two inquires whether HB 536 "violate[s] the constitutional provision that government is instituted for the common benefit, protection, and security, of the whole community, and not for the private interest or emolument of any one man, family, or class of men under part I, article 10 of the New Hampshire constitution?" We answer this question in the negative.

Part I, Article 10 provides:

Government being instituted for the common benefit, pro-

tection, and security, of the whole community, and not for the private interest or emolument of any one man, family, or class of men; therefore, whenever the ends of government are perverted, and public liberty manifestly endangered, and all other means of redress are ineffectual, the people may, and of right ought to reform the old, or establish a new government. The doctrine of nonresistance against arbitrary power, and oppression, is absurd, slavish, and destructive of the good and happiness of mankind.

This provision of our constitution has commonly been regarded as enumerating a citizen's right to reform an ineffectual or manifestly corrupt form of government. *See City of Claremont v. Craigue*, 135 N.H. 528, 533-34, 608 A.2d 866, 869 (1992); *Nelson v. Wyman*, 99 N.H. 33, 50, 105 A.2d 756, 770 (1954). We have recognized for over one hundred years, however, that this provision is imbued with "[t]he principle of equality [that] pervades the entire constitution," *State v. Pennoyer*, 65 N.H. 113, 114, 18 A. 878, 879 (1889), and as such, Article 10 provides support for the maxim that "[t]he law cannot discriminate in favor of one citizen to the detriment of another." *Id.* Thus, Part I, Article 10 has been recognized as providing for more than a "right of revolution"; rather, it is one of many provisions in our Bill of Rights that forms the basis for a citizen's right to equal protection. *See, e.g., Town of Chesterfield v. Brooks*, 126 N.H. 64, 67, 489 A.2d 600, 602 (1985) (zoning ordinance violated equal protection rights guaranteed by Part I, Articles 1, 2, 10, 12, and 14); *Gazzola v. Clements*, 120 N.H. 25, 29, 411 A.2d 147, 151 (1980) (statute violated equal protection rights guaranteed by Part I, Articles 1, 10, 12, and 14).

Pursuant to the principle of equality inherent in Article 10, this court found that the raising of tax revenue to aid an electric utility would violate Part I, Article 10's mandate that government is "instituted for the common benefit . . . of the whole community, and not for the private interest or emolument of any one man, family, or class of men." *Opinion of the Justices*, 88 N.H 484, 489, 190 A. 425, 429 (1937).

Aid to a utility is forbidden except in protection of the public welfare and interest. And the protection must be in a needed service furnished the public by the utility as a condition of the aid. Without the condition the protective principle is inapplicable. Unconditional aid is not a proper charge of government to be met by the taxpayers.

*Id.* at 488-89, 190 A. at 428. The court noted that the existing public utilities already provided sufficient power to service State customers, and that any additional supply was sent out-of- state. *Id.* at 489, 190 A. at 429. The court reasoned that because the transmission of additional electric energy outside the State served no public purpose, and thus the need for public funds for additional development was a private, not public, purpose, the proposed aid was unconstitutional. *Id.*

■ In this case, however, the legislature is proposing to create a tax exemption, rather than directly raising tax revenue to subsidize private purposes. *Cf. Opinion of the Justices (Mun. Tax Exemptions for Indus. Constr.)*, 142 N.H. at 101, 697 A.2d at 124 (finding determinative under Part II, Article 5 that there was not direct expenditure, but rather a uniform exemption of state-wide application). Moreover, even if one views an exemption as simply a form of direct grant, *see Eyers Woolen Co. v. Gilsum*, 84 N.H. 1, 9, 146 A. 511, 515 (1929) (exemptions are "in effect, a compulsory payment of money, by those who bear their shares of the common burden, to the privileged person who does not bear his share"), the public benefit gained by this legislation is sufficient to render it constitutional. Our constitution does not require absolute equality of burden in the case of exemptions. "The resulting inequality or discrimination against unexempted property is not fatal to the constitutionality of the exemption," *Opinion of the Justices*, 87 N.H. 490, 491, 178 A. 125, 126 (1935), provided "it advances a public purpose," *Opinion of the Justices*, 95 N.H. at 550, 65 A.2d at 701, and is "properly within the legislature's discretion in acting for the welfare of the state," *Opinion of the Justices*, 87 N.H. at 491, 178 A. at 126. As stated above, the benefit to be gained by HB 536 is increased competition and customer choice, and not necessarily the need for additional power. Further, deregulation of the electric utility industry is "properly within the legislature's discretion in acting for the welfare of the state," *id.*, and it is proper for the legislature to enact exemptions that promote the economic well-being of the State, *see Opinion of the Justices (Mun. Tax Exemptions for Indus. Constr.)*, 142 N.H. at 100, 697 A.2d at 123. Accordingly, the tax exemption is properly granted under the legislature's "constitutional power to provide for the common benefit, protection and security," *Opinion of the Justices*, 88 N.H. at 487, 190 A.2d at 428, and does not violate Part I, Article 10.

To the extent that question two implicates additional equal protection guarantees under Part I, Article 10, *cf. Gazzola*, 120 N.H.

at 29, 411 A.2d at 151, we conduct our analysis concurrently with the next question you posed; namely, whether HB 536 improperly classifies taxable property such that the burden of taxation is inequitably distributed, *cf. Rosenblum v. Griffin*, 89 N.H. 314, 320-21, 197 A. 701, 706 (1938) (constitutional issue of classification decided under Part I, Article 10). For the reasons stated below, this part of question two is answered in the negative.

Question three asks whether "the classification of taxable property provided for in HB 536 as amended [is] based on a reasonable distinction which promotes a proper object of public welfare and does not require any taxpayer to pay more than his or her fair share of the tax burden as required by part I, article 12 of the New Hampshire constitution?" We answer question three in the affirmative. Part I, Article 12 provides in part: "Every member of the community has a right to be protected by it, in the enjoyment of his life, liberty, and property; he is therefore bound to contribute his share in the expense of such protection, and to yield his personal service when necessary."

■ The legislature possesses broad authority to classify property as taxable and non-taxable and grant reasonable exemptions from taxation. *Opinion of the Justices*, 87 N.H. at 491, 178 A. at 126. "In the selective process of classifying certain property for taxation and exempting other property the Legislature has a wide discretion which will be sustained provided just reasons exist for the selection made." *Opinion of the Justices*, 95 N.H. at 550, 65 A.2d at 701 (quotation omitted). Thus, in order to pass constitutional muster, the legislature must have "just reasons" for creation of the exempt class, *see Opinion of the Justices*, 105 N.H. 22, 24, 192 A.2d 22, 23 (1963), and "[i]n this context, a just reason is the equivalent of a reasonable or rational basis," *Smith v. N.H. Dep't of Revenue Admin.*, 141 N.H. 681, 687, 692 A.2d 486, 491 (1997) (brackets and quotations omitted); *see Cagan's, Inc. v. Dep't of Rev. Admin.*, 126 N.H. 239, 245, 490 A.2d 1354, 1359 (1985). "Equal protection permits classifications that are reasonable and not arbitrary and have a rational relation to the public purpose sought to be achieved by the legislation involved." *Opinion of the Justices (Current Use Reimbursement Program)*, 137 N.H. 270, 277, 627 A.2d 92, 96 (1993). Therefore, "[a] reasonable classification which is sufficiently inclusive to constitute a distinctive class will be upheld," *Smith v. N.H. Dep't of Revenue Admin.*, 141 N.H. at 687, 692 A.2d at 491, as long as "the proposed selection is not arbitrarily made or for the sole purpose of preferring some taxpayers to others," *Opinion of the*

*Justices (Mun. Tax Exemptions for Indus. Constr.)*, 142 N.H. at 99, 697 A.2d at 123 (quotation omitted); *see Opinion of the Justices (Current Use Reimbursement Program)*, 137 N.H. at 275, 627 A.2d at 96. Further,

> [t]he basic principle that all taxpayers shall share the public expense equally is not violated by a legislative exemption of a certain class of property from taxation, in whole or in part, provided the exemption serves the general welfare. The classification must not be arbitrary, but must reasonably promote some proper object of public welfare or interest.

*Opinion of the Justices (Mun. Tax Exemptions for Indus. Constr.)*, 142 N.H. at 99, 697 A.2d at 123 (quotations, ellipsis, and citations omitted).

We first address whether there is a just reason for the legislature to allow municipalities to exempt the class of utility property set forth in HB 536. Again, we limit our analysis to the facial validity of the bill's classification of non-taxable property for purposes of this advisory opinion. *Opinion of the Justices (Property Taxation of Tel. Poles)*, 142 N.H. at 107, 697 A.2d at 128. The stated purpose of the bill is to promote "the development of a competitive electric supply market in New Hampshire and to give municipalities the ability to attract new electric generation facilities and retain existing generation facilities that have become subject to the economic pressures of a deregulated market." In furtherance of this goal, HB 536 authorizes each municipality to "exempt from taxation so much of the equipment for the generation and production of electric power . . . as [it] determines will attract new construction of electric generation facilities, retain existing electric generation facilities, or foster economic development." HB 536(2) (proposed RSA 72:8, II(b)) (emphasis added). Once a municipality has granted an exemption under this provision, it must apply to all like property within the municipality. *See* HB 536(2) (proposed RSA 72:8, II(a)).

The exemption of electric utility property, whether new or existing, is rationally related to the public purpose of increased competition by making it attractive for new producers to locate in this State, while relieving existing producers of the burden that increased competition may pose where the municipality determines that the exemption is necessary to further the stated public purpose. In addition, fostering economic development is a just reason for providing limited tax exemptions. *See Opinion of the*

*Justices (Mun. Tax Exemptions for Indus. Constr.)*, 142 N.H. at 100, 697 A.2d at 123. Accordingly, because the class of property is sufficiently inclusive and distinct, and bears a rational relation to the stated public purpose, we find no violation of Part I, Article 12.

Further, because we conclude that on its face HB 536 does not improperly classify non-taxable property, and having concluded above that the proposed exemption serves the general welfare, we answer the remaining part of question two in the negative, and question three in the affirmative.

We have consistently stated that in rendering an advisory opinion, we are limited to assessing the legality of any bill in a vacuum, and as such, can neither predict nor decide every issue that may be raised in any future adversarial proceeding. *See, e.g., Opinion of the Justices*, 112 N.H. 42, 46, 288 A.2d 697, 700 (1972). Our task today is merely to determine whether HB 536 satisfies the constitutional mandates of Part I, Articles 10 and 12, and Part II, Article 5. We conclude that on its face, the requirements of those constitutional provisions have been met.

DAVID A. BROCK
WILLIAM R. JOHNSON
W. STEPHEN THAYER, III
SHERMAN D. HORTON, JR.
JOHN T. BRODERICK, JR.

*Upton Sanders & Smith*, of Concord (*Robert Upton II* on the memorandum), filed a memorandum on behalf of the Towns of Bow and Newington in support of affirmative answers to questions one and two and a negative answer to question three.

*McLane, Graf, Raulerson & Middleton, P.A.*, of Concord (*Gregory H. Smith & a.* on the memorandum), filed a memorandum on behalf of AES Londonderry in support of negative answers to questions one and two and an affirmative answer to question three.

*Representative Jeb E. Bradley*, of Concord, filed a memorandum in support of negative answers to questions one and two and an affirmative answer to question three.

*Executive Councilor Thomas P. Colantuono,* of Derry, filed a memorandum in support of affirmative answers to questions one and two and a negative answer to question three.

*Londonderry Neighborhood Coalition,* of Londonderry, filed a memorandum opposing the proposed legislation.

*Joseph S. Haas, Jr.,* of Ashland, filed a memorandum on the questions.