Rockingham,
No. 5121.

MARTHA PARKINSON *v.* STATE.

Argued May 7, 1963.
Decided May 28, 1963.

*Lewis F. Soule* (by brief and orally), for the plaintiff.

*William Maynard*, Attorney General and *Alexander J. Kalinski*, Assistant Attorney General (*Mr. Kalinski* orally), for the State.

KENISON, C. J.   The plaintiff's damage was estimated to be $18,000 and $20,300 respectively by the two witnesses for the plaintiff and $13,000 by the witness for the State.   Both of the plaintiff's real estate experts had ample experience in the town of Salem in the purchase and sale of real estate and as real estate brokers, but one of them had never testified in court and the other had appeared on only two occasions.   The State does not maintain that they could not qualify as witnesses on market value but rather that their method of arriving at the value of the land of the plaintiff which was condemned was improper and erroneous and therefore their testimony should be stricken from the record and there should be a new trial.   The contention is stated as follows: "In essence, what both of the

petitioner's real estate experts testified to was that in order to arrive at their opinion of fair market value before and after the taking they had divided the petitioner's five-acre residential tract of land into imaginary lots, placed a value on each lot and then added up these separate values to arrive at the figures to which they testified." If that is what these witnesses did and all they did, the State's contention is well taken but this does not appear to be the situation as disclosed by the whole record. *Roy* v. *State*, 104 N. H. 513.

The plaintiff's witness, Nalbandian, testified on both direct and cross-examination that he considered the property taken by the State as a "whole parcel" and that he "did not break it down into lots to justify" the final figure he arrived at. The other witness, Barron, was not as clear on this point but when asked if his "before value taking" represented the whole, he replied: "Yes, lock, stock and barrel." In other words, although the witnesses explained their testimony as to value by stating the number and value of the lots in the property condemned, their estimates of value were not arrived at solely by adding up the values of each individual lot. One may be suspicious there will be experts who will use one method that is not permissible and explain it by another method that is permissible. But the remedy is not to lay down special and circumscribing rules which exclude value testimony as Judge *Learned Hand* pointed out in *United States* v. *New York*, 165 F. 2d 526, 529 (2d Cir. 1948). The remedy is to allow full cross-examination and to carefully instruct the jury to determine the value of property as a whole unit "and not add up what separate lots might bring and determine the value that way." This was done in *Roy* v. *State, supra*, and in this case.

In this case, as in *Clancy* v. *State*, 104 N. H. 314, 316, the "jury was instructed, without exception by either party, to determine the difference 'between the fair value of [the plaintiff's] whole property' before the taking, and 'the fair value of what was left' after the taking." When a jury is thus properly instructed the deficiencies in testimony of the real estate experts, exposed to careful cross-examination, goes to the weight of their testimony rather than its admissibility. *Roy* v. *State, supra; Edgcomb Steel Co.* v. *State*, 100 N. H. 480, 492; *Cade* v. *United States*, 213 F. 2d 138, 140 (4th Cir. 1954). The fact that these experts had little or no courtroom experience may in part account for

failure to present their conclusions with desired clarity but as said by Lord *Ellenborough* many years ago of some other witnesses: " . . . their opinion might not go for much; but still it was admissible evidence." *Beckwith* v. *Sydebotham*, 1 Camp. 116, **170** Eng. Rep. 897 (1807). We find no basis to overrule the Trial Court in refusing to strike their testimony from the record.

*Judgment on the verdict.*

All concurred.