Merrimack
No. 82-530

STUART J. STEELE & a.

v.

TOWN OF ALLENSTOWN

February 16, 1984

*Cullity & Kelley,* of Manchester (*John C. Boeckeler* on the brief and orally), for the plaintiffs.

*Wadleigh, Starr, Peters, Dunn & Chiesa,* of Manchester (*James C. Wheat & a.* on the brief, and *Mr. Wheat* orally), for the defendant.

DOUGLAS, J.   The principal issue in this real estate tax abatement case is whether property presently being used as a privately owned, federally subsidized housing project should be appraised as such or appraised as a non-subsidized, multi-family apartment complex. We reverse the superior court's granting of a tax abatement and remand.

The plaintiffs built and own a housing project for the elderly in Allenstown known as the Suncook Pond Housing for the Elderly Complex. The project is subject to federal regulations and receives rent subsidies as a section 8 project administered by the Federal Housing Authority and the Department of Housing and Urban Development. *See* 42 U.S.C. § 1437f. Both parties agree that the market rents in the area would not have justified building the project and that it would not have been feasible without the government subsidies.

The town appraised the property for tax purposes at $1,716,190 for each of the years 1979 and 1980. The plaintiffs disputed the assessment and requested a tax abatement for each year. After a denial of their requests, the plaintiffs petitioned the superior court for an abatement of real estate taxes pursuant to RSA 76:17 (Supp. 1983). The Trial Court (*Cann,* J.) approved the Master's (*Thomas M.*

*Pancoast,* Esq.) recommendation that a tax abatement for the years in question be granted, and the town appealed.

At trial, real estate appraisers for both parties sought to prove the value of the plaintiffs' property. The plaintiffs' appraiser, Henry Lombardelli, testified that in his opinion the fair market value of the property as of April 1, 1979 was $1,100,000. In reaching this figure, Mr. Lombardelli relied primarily on the cost and income approaches to valuation, and gave some consideration to the market approach. His report developed the following values: cost approach—$1,100,000; income approach—$1,070,000; and market approach—$1,100,000. The town's appraiser, Vern Gardner, testified that in his opinion the fair market value of the property was $1,407,040, as of April 1, 1979. In determining that value, Mr. Gardner relied on the cost, income and market approaches. His report developed the following values: cost approach—$1,407,000; income approach—$1,428,853; and market approach—$1,500,000.

Lombardelli, in making his appraisal, valued the property as if unbenefited and unaffected by the government rental assistance contract. In his opinion, the highest and best use of the property was that of an apartment complex. He reasoned that the government contract, from a valuation standpoint, was the equivalent of a long-term lease and that a lease is not considered in a valuation of real estate. Gardner, on the other hand, was of the opinion that the highest and best use of the property was its present use. Thus, his appraisal values the property as a government subsidized housing project.

In determining value by the cost approach, Lombardelli estimated the cost of reproducing a replica of the building. He then deducted certain sums for depreciation and added a land value. The depreciation deductions were based upon Lombardelli's opinion that the project should be valued as a multi-family housing development. Thus, he took the cost of reproducing the project and depreciated it for functional obsolescence (reflecting features required by the government regulations for which the market would have no use) and economic obsolescence (reflecting factors outside the property, such as the decrease in market rental value). In valuing the property according to the income approach, Lombardelli estimated the competitive income-producing capability of the property on an unsubsidized basis through a survey of rents in the market area (economic rent). He valued the economic rent at $225 per unit per month. In estimating valuation by the market approach, Lombardelli compared the sales of multi-family apartment complexes in New Hampshire.

In calculating the valuation using the cost approach, Gardner estimated the cost of reproducing the project and added a land value. He did not depreciate the figure because the project, as government-subsidized housing, did not suffer from physical, functional or economic obsolescence. In appraising the property by the income approach, Gardner calculated the gross income on the basis of the contract rents—the actual rent the owner was receiving, including rent subsidies. The contract rent is $325 per unit per month. Gardner compared the sales of two federally subsidized housing projects in appraising value by the market approach.

The master adopted the plaintiffs' theory of valuation and found that both the cost and income approaches to value were the best approaches. He also found that "the highest and best use is that of multi-family rental housing." He reasoned that "to consider the rental subsidies in applying the income approach or to consider the plaintiffs' financing (the latter two being personal to the plaintiff) would impose a higher and disproportionate tax upon the plaintiffs as compared to the other taxpayers in the town." Because we find that the master erred as a matter of law, we reverse and remand for a determination of value consistent with this opinion. *590 Realty Co., Ltd. v. City of Keene*, 122 N.H. 284, 285, 444 A.2d 535, 535 (1982).

The defendant argues that real property must be appraised at its best and highest use, which in this case is its present use as a federally subsidized housing project and not the presumed, converted use as non-subsidized multi-family housing.

██ RSA 75:1 (Supp. 1983) provides that all taxable property shall be appraised at "its full and true value." This court has held that property is to be valued at its "'best and highest use.'" *590 Realty Co., Ltd. v. City of Keene, supra* at 285, 444 A.2d at 536 (quoting *Blue Mountain Forest Association v. Town of Croydon*, 119 N.H. 202, 203, 400 A.2d 55, 56 (1979)). Best and highest use has been defined as that "use which will most likely produce the highest market value, greatest financial return, or the most profit. . . ." *State National Bank v. Planning & Zoning Commission*, 156 Conn. 99, 101, 239 A.2d 528, 530 (1968).

██ The record indicates that the property's use as a federally subsidized housing complex is the use that will produce the highest market value and the greatest economic return. The market value of the property, if sold as federally subsidized housing, is $1,407,040, while the market value of the property, if sold as non-subsidized multi-family housing, is $1,100,000. The rent under the government assistance contract is $325 per unit per month; the market rent is

approximately $225 per unit per month. Hence, the best and highest use of the property is that of federally subsidized housing.

The master incorrectly found that the highest and best use of the property is that of non-subsidized, multi-family housing. He reasoned that the government assistance contract should not be considered in the valuation of the property because it is personal to the plaintiffs. We agree that the value of property for taxation purposes is not determined by the value to the owner, *Trustees &c. Academy v. Exeter*, 92 N.H. 473, 485–87, 33 A.2d 665, 673–74 (1943), but, "if the property is available to others for use which he has made of it, such transmissable use is of material bearing in estimating value." *Id.* at 486, 33 A.2d at 673.

In the instant case, the government assistance contract provides, in pertinent part:

> "The owner agrees that he has not made and will not make any sale, assignment, or conveyance or transfer in any other form, of this Contract or the project or any part thereof or any of his interest therein, without the prior written consent of HUD. . . ."

Although the contract is personal to the plaintiffs, nothing in the contract or the record indicates that the property may not be available to others for use as government-subsidized housing. On the contrary, the contract language requiring prior written consent implies that the property *is* available to others for such use. "[A]ll uses of which the property inherently and in its own character are capable serve in the reflection of value." *Trustees &c. Academy v. Exeter, supra* at 486, 33 A.2d at 673.

Further, "plaintiff[s] should be taxed on [their] property's fair market value, and fair market value encompasses 'use of the property for the special purpose for which it has been constructed and is being employed. . . .'" *590 Realty Co., Ltd. v. City of Keene, supra* at 287, 444 A.2d at 536–37 (quoting *Amoskeag-Lawrence Mills v. State,* 101 N.H. 392, 399, 14 A.2d 221, 226 (1958)). Here, the property was designed and constructed as a federally subsidized housing project. It has operated as such, and we find nothing in the record which indicates that it will not continue to so operate.

The master's finding that the federal subsidies should not be considered is inconsistent with the well-established rule that "all relevant factors to property value should be considered when making an appraisal in order to arrive at a just result." *Paras v. Portsmouth,* 115 N.H. 63, 67–68, 335 A.2d 304, 308 (1975). To ignore the

government regulations and federal subsidies in assessing value also is contrary to the rule that government regulations concerning subsidized financing are a relevant factor for the purpose of determining the market value of federally subsidized housing, *see Royal Gardens Company v. City of Concord,* 114 N.H. 668, 671–72, 328 A.2d 123, 124–25 (1974), and the rule that "in estimating the value of property, . . . state and federal control of income is taken into account." *Demoulas v. Town of Salem,* 116 N.H. 775, 781, 367 A.2d 588, 593 (1976).

Because we hold that the property should have been valued as federally subsidized housing, we need not reach the additional issues raised by the parties.

*Reversed and remanded.*

All concurred.