Board of Tax and Land Appeals
No. 83-370

APPEAL OF TOWN OF HOLLIS
(New Hampshire Board of Tax and Land Appeals)

March 18, 1985

*Sullivan, Gregg & Horton P.A.*, of Nashua (*James L. Sullivan, Jr.*, on the brief and orally), for the Town of Hollis.

*Thomas H. Enright*, of Milford, by brief and orally, for taxpayers Holly Hill Farms, Inc. &a.

SOUTER, J.    This is an appeal by the Town of Hollis under RSA 79-A:9, VI (Supp. 1983) from a decision of the New Hampshire Board of Tax and Land Appeals. The board held that the town should assess the land use change tax authorized by RSA 79-A:7 (Supp. 1983) as of the date the taxpayers began to construct a road to serve a planned subdivision, even though the town's planning board had not yet approved the taxpayers' application for local subdivision approval. We affirm.

Before November 1982 the taxpayers' property in the town of Hollis qualified as "open space land" and its appraisal for the purpose of property taxation was "based upon . . . current use values" established by the Current Use Advisory Board. RSA 79-A:5, I (Supp. 1983). In March 1982 the taxpayers applied to the town planning board for approval to subdivide the land as a planned unit development. While the application was pending, on November 5, 1982, the taxpayers began to construct a road to town specifications to serve the anticipated subdivision. On November 15, 1982, the planning board approved the application.

Because the taxpayers had changed the use of the land "to a use which does not qualify for open space assessment," the town then assessed the land use change tax of "10 percent of the full and true value." RSA 79-A:7, I (Supp. 1983). The town originally assessed the tax as of December 10, 1982. Although the record is far from clear, it appears that the town calculated full and true value as the total anticipated sales prices of the subdivided lots. That is, in calculating value the town considered the subdivision approval, the value of improvements made between November 5 and December 10, and increases in value attributable to all other steps that would be necessary to market the lots.

The taxpayers appealed to the board of tax and land appeals. Thereafter the town revised its valuation and assessment. With respect to a portion of the land, the taxpayers nonetheless pursued their appeal to the board.

The record of the proceedings before the board is not clear, though there is no question that two closely related matters were in

issue: the date of the change in use, on which the land is to be valued and the tax assessed; and the extent to which the valuation can reflect the land's commercial potential for subdivision.

On the matter of the proper date of valuation, the taxpayers maintained that the use had changed within the meaning of the statute at the moment they had begun to construct the road on November 5. They therefore argued that the valuation could not reflect the value of improvements, such as the road, made thereafter or the value attributable to the later subdivision approval granted on November 15. The taxpayers then urged the board to require the town to consider what they claimed to be comparable sales and comparable treatments of use change taxation. Beyond that, the record indicates only that the taxpayers claimed that the land was worth about two-thirds of what the town claimed.

While it is not certain that the town continued to maintain that December 10 was the right valuation date, the town did argue that the valuation should reflect the fact of the subdivision approval on November 15 and the value of all improvements that had been made by that time. The town recognized that a valuation on November 5 would produce a lower value and a lower tax.

■ The board relied on *Appeal of Town of Peterborough*, 120 N.H. 325, 414 A.2d 1292 (1980) in agreeing with the taxpayers that the proper valuation date was November 5, at the moment road construction began. In *Peterborough* this court upheld the board's determination that the change in land use, from preservation of open space to use as a subdivision, occurred when the taxpayer began making physical improvements to the land for the purpose of subdividing it, even though the local planning board did not grant subdivision approval until later. We held that former RSA 79-A:7, IV(a) (Supp. 1979) (thereafter amended in respects not relevant here) mandates this result, by its provision that "land use shall be considered changed and the land use change tax shall become payable when: (a) [a]ctual construction begins on the site causing physical changes in the earth," as exemplified by building roads or installing utilities "to serve existing or planned . . . buildings," or by excavating and grading "for present or future construction of buildings." *Id.* The statute then made and now makes no reference to local subdivision approval in identifying the point at which a change in land use occurs. Accordingly, this court in *Peterborough* held that local subdivision approval was not necessary before a change in use could occur within the meaning of the statute. In the case now before us, the board applied the statute as it had applied it in *Peterborough*, and we find no error in the determination that the change in use occurred on November 5.

The town seeks to avoid this result by invoking the warning to developers that we included in the *Peterborough* opinion, that RSA 149-E:3, IX prohibits construction of roads and other alterations of land in a proposed subdivision before obtaining subdivision approval from the New Hampshire Water Supply and Pollution Control Commission. The town claims that the taxpayers violated this statute and performed a prohibited act by starting road construction on November 5. Conversely, the taxpayers claim that they had obtained all required State approvals by November 5.

It would be improper to consider the town's claim of illegality, for it is a disputed factual matter, and the record does not indicate that it was raised before the board. *See Daboul v. Town of Hampton*, 124 N.H. 307, 471 A.2d 1148 (1983). We do not therefore reach the question whether a violation of RSA 149-E:3, IX should affect the date at which a change in use may be recognized under RSA 79-A:7, I (Supp. 1983). Nor do we consider the related issue of the significance of a violation of local subdivision regulations by engaging in construction before local subdivision approval. The town did not seek to raise this issue before the board until after the case had been submitted. The board agreed with the taxpayers that the town's attempt to raise the issue was untimely, and the town took no appeal from this ruling.

In upholding the board's conclusion that the use changed on November 5, we do not, however, resolve all of the disagreement between the parties. The parties also disagree about the extent to which the valuation as of November 5 can reflect the land's commercial potential for subdivision.

The town of course concedes that in valuing the property as of November 5, it may not simply include the full value of improvements that had not yet been made or the commercial value attributable to the local subdivision approval that had not yet been granted. Nonetheless, in its brief the town argues that it should be able to value the land "with a view to the subdivision of the property contemplated by the taxpayers . . . ." The town argues that unless such a "view" is permissible, the value as of November 5, when the bulldozer hit the ground, will turn out to be "glaringly" different from the value as of November 15, when the local planning board granted subdivision approval.

The taxpayers deny that any such "view" toward the anticipated subdivision is permissible, and they believe that the board accepted their position on this issue. The only thing that we can say with certainty is that the board did not address this issue explicitly. On the one hand, the board directed the town to consider the taxpayers' proffered evidence of comparable sales and comparable valuations

in other instances of assessment of the change of use tax. On the other hand, as we have noted before, the board rested its decision on the opinion of this court in *Peterborough;* and on the issue of valuation, that opinion was more favorable to the town than the taxpayers are ready to concede.

In *Peterborough* this court held that later sales prices of subdivided lots were relevant evidence of value at the earlier date of the change in land use, even though the sales prices could not be considered *"alone* as the *sole* indicator of 'full and true value . . . .'" *Appeal of Town of Peterborough*, 120 N.H. 325, 329, 414 A.2d 1292, 1294 (1980) (emphasis in original). This rule is controlling here.

■ Accordingly, when this case returns to the town, the town need not, and should not, ignore the potential for development as it existed on November 5, 1982. To be sure, there was no actual subdivision approval on that date, and without such approval the value of the land was presumably lower to some extent than it was after such approval. Nor were there any improvements like roads and utilities to be considered as of that date. But it does not follow that the town must be blind to the economic reality of "the land's best and highest use" when it determines "full and true value" under RSA 79-A:7, I (Supp. 1983) as of the date of the change in use. *See Steele v. Town of Allenstown*, 124 N.H. 487, 490, 471 A.2d 1179, 1181 (1984). Rather, the town should consider the potential for development as it would with any piece of comparable land that is not subject to current use valuation. While the value as of November 5 will still turn out to be lower than the value as of November 15, the difference should be less startling than the arguments before us suggested.

*Affirmed.*

All concurred.