Board of Tax and Land Appeals
No. 86-207

APPEAL OF SAWMILL BROOK DEVELOPMENT CO.

(New Hampshire Board of Tax and Land Appeals)

June 5, 1987

*Winer, Pillsbury and Bennett,* of Nashua (*Robert W. Pillsbury* on the brief and orally), for Sawmill Brook Development Co.

*Bossie, Kelly & Hodes P.A.,* of Manchester (*Jay L. Hodes* on the brief and orally), for the Town of Litchfield.

BROCK, C.J. This is an appeal by the taxpayer, Sawmill Brook Development Co. (Sawmill or the taxpayer), from a decision of the board of tax and land appeals (board). The taxpayer challenges the methodology used by the Town of Litchfield's (town) appraiser and accepted by the board in reviewing two change of use tax assessments levied pursuant to RSA 79-A:7, I (Supp. 1986) against the taxpayer. We affirm.

The town levied the assessments on a two-phased development: phase I, a planned 50-lot subdivision consisting of 80.1 acres, and phase II, a planned 93-lot subdivision with a total acreage of 97.63 acres. Sawmill had initially purchased this and other acreage for $3,500 per acre; the land was under current use assessment at the time of purchase. On October 3, 1984, the town planning board approved the phase I subdivision subject to the condition that Sawmill obtain access from the subdivision to Hillcrest Avenue by means of a land trade between the State and the developer. The change of use with respect to phase I occurred on October 4, 1984. Phase II approval was conditionally granted on February 6, 1985, and the change of use on that property occurred on March 28, 1985. The phase I property was assessed at $537,500, and the phase II property was assessed at $752,100, both as of the respective dates of their changes in use.

After the assessments were made, the taxpayer appealed to the board of tax and land appeals, which upheld the validity of the assessments. The taxpayer then moved for rehearing, which the board denied, and the taxpayer appeals both of these decisions.

■ On appeal, Sawmill makes several arguments as to why the valuation methodology adopted by the board was incorrect. First, it argues that the town's appraiser failed to take into account the conditional nature of the subdivision approval given by the town to the taxpayer. Second, it argues that the town's appraiser should have valued the land on an acreage, rather than a lot, basis. Finally, the taxpayer alleges that the board presumed erroneously that the town's position was correct as a matter of law. We consider each of these issues in order.

RSA 79-A:7, I (Supp. 1986) provides in pertinent part that

> "[l]and which has been classified as open space land on or after April 1, 1974 pursuant to this chapter shall be subject to a land use change tax when it is changed to a use which does not qualify for open space assessment. Notwithstanding provisions of RSA 75:1, said tax shall be at the rate of 10 percent of the full and true value determined without regard to the open space assessed value of the land changed to other than open space use or any equalized value factor used by the municipality in which the land is located. Notwithstanding the provisions of RSA 76:2, such assessed value shall be determined as of the actual date of the change in land use if such date is not April first."

The "full and true value" of the land in question is that which represents its ""'best and highest use.'"" *Steele v. Town of Allenstown*, 124 N.H. 487, 490, 471 A.2d 1179, 1181 (1984) (quoting *Blue Mountain Forest Association v. Town of Croydon*, 119 N.H. 202, 203, 400 A.2d 55, 56 (1979)). Furthermore, "[b]est and highest use has been defined as that 'use which will most likely produce the highest market value, greatest financial return, or the most profit. . . .'" *Steele supra* (quoting *State National Bank v. Planning & Zoning Commission*, 156 Conn. 99, 101, 239 A.2d 528, 530 (1968)). The parties agree, and the board so found, that the best and highest use of both properties is residential development.

The questions we decide are whether the board's decision was erroneous as a matter of law, *see* RSA 79-A:10 (Supp. 1986); RSA 76:16-a, V (Supp. 1986), and whether the denial of the taxpayer's motion for rehearing was an abuse of discretion, *see Demoulas v. Town of Salem*, 116 N.H. 775, 779, 367 A.2d 588, 592 (1976).

■ We first describe the valuation methodologies that the parties' appraisers used. Generally, three methods may be used to value property for tax purposes: the replacement cost approach, the comparable sales approach, and the capitalization of income approach. *See Town of Croydon v. Current Use Advisory Bd.*, 121 N.H. 442, 446, 431 A.2d 126, 129 (1981). In this instance, the town's appraiser used what the town terms a "comparable sales/market value" approach, and the taxpayer's appraiser used what the taxpayer terms a "direct sales comparison" approach. The town's appraiser compared sales of other properties, set an estimate of the value of each lot, and then "backed out" development costs and certain other costs and concluded that the phase I value was $537,500 and the phase II value was $752,100.

To value phase I and phase II, the taxpayer's appraiser compared certain other sales of properties, and set a valuation per acre based on those comparisons. In this instance, the appraiser concluded that the per acre value of both phase I and phase II was $3,500. As to phase I, he simply multiplied $3,500 by the number of acres in phase I and concluded that the phase I rounded valuation was $280,400. He added no additional value to the valuation of phase I to reflect the potential for commercial development, apparently because there was no access to the land when it was taken out of current use. He arrived at phase II valuation by multiplying $3,500 per acre, plus development costs and development potential of $1,000 each, respectively, times the number of acres in the development, resulting in a total phase II rounded valuation figure of $537,000. The second addition to the base value reflected the fact that phase II had access to public roads and that phase I was partially developed as of the date of change in use. In addition, $1,000 per acre was added to reflect development costs.

Sawmill's first contention is that, at the time of assessment, the fact that the approval of the phase I and phase II subdivisions was only conditional was not taken into consideration in taxing the land for RSA chapter 79-A (Supp. 1986) purposes, thus producing an artificially high valuation. In support of its position, Sawmill cites the two cases, *inter alia*, of *Appeal of Town of Hollis*, 126 N.H. 230, 490 A.2d 775 (1985) and *Sklar Realty v. Town of Merrimack*, 125 N.H. 321, 480 A.2d 149 (1984).

In *Hollis*, this court held that, in rendering an appropriate property valuation, a town should not be blind to

"the economic reality of 'the land's best and highest use' when [the town] determines 'full and true value' . . . as of the date of the change in use. Rather, the town should con-

sider the potential for development as it would with any piece of comparable land that is not subject to current use valuation."

*Hollis, supra* at 234, 490 A.2d at 778 (citation omitted). The date of valuation in *Hollis* was prior to any subdivision approval being granted, and thus, to that extent, the case is not on all fours with the present case, where valuation took place after conditional approval had been granted. In addition, while this court in *Hollis* recognized that a pre-approval valuation would likely be lower than a post-approval valuation, *see id.*, it did not deal with the question of the valuation of a property that has been conditionally approved. *Sklar* *supra* is not on point because it likewise did not deal with the issue raised here. In *Sklar*, we recognized that conditional approval was an "interim step" in the process of obtaining final approval, *Sklar, supra* at 327, 480 A.2d at 152, but there we dealt primarily with the questions of whether a planning board could attach conditions to its approval of a non-residential use of land and whether an abutter has the right to be heard on the question of whether compliance with imposed conditions has taken place. Valuation is, we think, another question entirely. Thus, neither *Hollis* nor *Sklar* supports Sawmill's position.

■ Moreover, we reject Sawmill's argument for a more fundamental reason. Beyond the fact that the taxpayer treated the board's approval of the plans as final for purposes of beginning construction, it introduced no evidence of the difference in value resulting from the fact that only conditional approval was given. The taxpayer therefore did not meet its burden to show that an abatement was proper. While we recognized in *Hollis* that lack of subdivision approval may render the value of the land lower than it would be after approval, we did not deal there with the degree of the lessened valuation, nor did conditional approval of the subdivision exist in that case at the time of valuation. The board here acted properly in refusing to conclude, absent proof by the taxpayer, that the attachment of a condition to approval by a town planning board lowers the value of the property for purposes of RSA 79-A:7, I (Supp. 1986).

■ The taxpayer's argument that the town's assessor erroneously assessed the value of the subdivisions on a lot, rather than an acreage, basis is equally devoid of merit. Neither *Appeal of Town of Peterborough*, 120 N.H. 325, 414 A.2d 1292 (1980) nor *Appeal of Town of Hollis*, 126 N.H. 230, 490 A.2d 775 (1985) expressly holds that acreage is the only proper unit of valuation. The only other case the taxpayer cites for this proposition is *Parkinson v. State*, 104

N.H. 534, 191 A.2d 361 (1963), an eminent domain case, which involved an argument by the State that the petitioner's appraisers "'had divided the petitioner's five-acre residential tract of land into imaginary lots, placed a value on each lot and then added up these separate values to arrive at the figures to which they testified.'" *Id.* at 536, 191 A.2d at 362. The court rejected the State's characterization of what the petitioner's experts did, but agreed that such a methodology would have been improper. *Parkinson* is inapposite, however. Lot valuation in that instance would have been improper because the tract being valued was neither subdivided nor intended to be subdivided at the time of valuation. That is a circumstance categorically different from the one at bar, where the subdivision plans had been made and conditionally approved at the time of valuation. Thus, in this case, we hold that the acceptance of an assessment based on valuation on a lot basis was not erroneous as a matter of law.

■ The final argument raised by the taxpayer is that the board erroneously presumed that the town's appraisal was correct. Assuming that this issue has been properly raised, neither the record nor the board's decision indicates such a presumption. The board's decision specifically stated that the taxpayer had the burden "to show that the subject Sawmill Brook subdivision was unfairly, improperly or unequally valued on the Phase I and Phase II dates of change in use when the land use change tax is fixed by statute." The board found that that burden had not been met, and we hold that its decision was not clearly erroneous.

Finally, the taxpayer made only a passing reference in its brief to the town's appraiser's failure to include financing as a development cost in arriving at a per lot valuation. Therefore, we do not address this issue. *See D. W. Clark Road Equip., Inc. v. Murray Walter, Inc.,* 124 N.H. 281, 285, 469 A.2d 1326, 1329 (1983).

■ Since we have found no error in the board's decision, we hold that it did not abuse its discretion in denying the taxpayer's motion for rehearing.

*Affirmed.*

All concurred.