Board of Tax and Land Appeals
No. 98-070

APPEAL OF ESTATE OF RICHARD VAN LUNEN

(New Hampshire Board of Tax and Land Appeals)

April 12, 2000

*Jordan, Gall & Buchanan, P.A.*, of Nashua (*Alexander S. Buchanan* on the brief and orally), for the petitioner.

*Drescher & Dokmo, P.A.*, of Milford (*William R. Drescher* on the brief and orally), for the respondent.

BRODERICK, J. The petitioner, the estate of Richard Van Lunen, appeals a decision of the New Hampshire Board of Tax and Land Appeals (board) denying its request for an abatement of a land use change tax on an approved subdivision in Amherst. We affirm in part, reverse in part, and remand.

In 1981, the petitioner's predecessor in title placed approximately twenty-five acres in current use. *See* RSA ch. 79-A (1991). In 1995, Van Lunen received approval for an eight-lot subdivision. In the summer of 1995, he began logging, stumping, and excavating the proposed access road and a nearby area reserved for septic disposal and stump burial. In addition, he logged the driveway shown on the site plan and portions of several lots. In November 1995, the respondent, the Town of Amherst (town), sent Van Lunen a land use change tax bill for the road area, concluding that its use changed in August. Subsequently, the town removed the subdivided lots from current use on a lot-by-lot basis as they were built or sold through July 1996. In December 1995, the petitioner filed an abatement

request with the town on all lots, including the road. The request was denied in January 1996.

The petitioner appealed to the board, arguing that RSA 79-A:7, V(a) (Supp. 1995) requires a single land use change tax assessment on the entire subdivision at the time road work began and that a lot-by-lot assessment was unlawful. The petitioner also argued that the town should have valued the lots after deducting the value of the betterments. The board ruled that the petitioner did not timely file for abatement with the town on two lots, and that the town properly assessed the land use change tax under the 1991 amendments to RSA 79-A:7, IV. Finally, it ruled that the road construction triggered a change in use for the road only. The petitioner's motion for reconsideration was denied. This appeal followed.

The petitioner argues that his December 1995 abatement application to the town was timely as to all lots, and that RSA 79-A:7, informed by New Hampshire Administrative Rules, Cub 301.05 and our prior holdings in *Appeal of Town of Hollis*, 126 N.H. 230, 490 A.2d 775 (1985), and *Appeal of Town of Peterborough*, 120 N.H. 325, 414 A.2d 1292 (1980), obligated the town to remove all lots in the subdivision from current use when construction began on the road in the summer of 1995. Finally, he asserts that by including the value of betterments in the value of the lots, the board failed to properly apply the provisions of New Hampshire Administrative Rules, Cub 308.01.

I

We first determine which land use change tax assessments were timely appealed to the town and the board. "Our review of the board's actions is limited to questions of law." *Turetsky v. Town of Gilsum*, 118 N.H. 23, 24, 382 A.2d 375, 376-77 (1978); *see* RSA 76:16-a, V (1991).

The petitioner argues that his appeals were timely filed for all lots because his December 1995 abatement application to the town specifically included every lot. The board, however, considered only lots 15, 15-2, and 15-3 because it found that the filing requirements for the road and remaining lots were not met. We agree.

RSA 79-A:10 (1991) (amended 1998) requires that land use change tax appeals follow the procedure outlined in RSA chapter 76. Because the relevant provision was amended effective January 1, 1996, we consider both versions of RSA 76:16 and :16-a. To appeal land use change tax bills mailed before January 1, 1996, a taxpayer is required to file a written abatement application with the munic-

ipality within two months following notice of the tax, *see* RSA 76:16, I (Supp. 1995), and appeal any denial to the board within eight months of such notice, *see* RSA 76:16-a, I (Supp. 1995). "Notice of the tax" is defined as "the date the board . . . determines to be the last date of mailing of the final tax bill by the taxing district." RSA 76:16-a. To appeal land use change tax assessments mailed after January 1, 1996, however, the taxpayer is generally required to file a written abatement application with the municipality by March 1, *see* RSA 76:16, I (Supp. 1996), and appeal a town's refusal to abate to the board on or before September 1, *see* RSA 76:16-a, I (Supp. 1996).

■ The petitioner filed his abatement application with the town for the entire tract on December 29, 1995. On August 12, 1996, he appealed the town's denial to the board for the road and lots 15, 15-2, 15-3, 15-5, and 15-7. Because the petitioner did not file any appeal with the board for lots 15-4 and 15-6, we affirm its implicit determination that no appeal was perfected. *See Appeal of Town of Sunapee*, 126 N.H. 214, 216, 489 A.2d 153, 155 (1985).

■ As for the road, the town's land use change tax assessment was dated November 6, 1995. Accordingly, the board found that the deadline for filing an application for abatement with the town was January 8, 1996; the board's deadline was July 8, 1996. *See* RSA 76:16, :16-a (Supp. 1995). Therefore, Van Lunen's application to the town was timely, but he failed to meet the board's deadline. *See* RSA 76:16, :16-a (Supp. 1995).

■ As to lots 15, 15-2, and 15-3, the town's land use change tax assessment was dated December 12, 1995. The board found that the deadline for filing an abatement application with the town was February 12, 1996; the board's deadline was August 12, 1996, *see* RSA 76:16, :16-a (Supp. 1995). Due to the petitioner's death on August 8, 1996, the deadline for filing abatement applications with the board was extended to August 12, 1997, one year following the original grant of administration. *See* RSA 556:7 (1997). Thus, the petitioner's applications to the town and to the board on these lots were timely. *See* RSA 76:16, :16-a (Supp. 1995).

■ As to lots 15-5 and 15-7, the town's land use change tax assessments were dated July 9 and July 29, 1996, respectively. The board found that the deadline for filing abatement applications with the town on these lots was also August 12, 1997. *See* RSA 556:7. Van Lunen, however, had filed an abatement application with the town on these lots in December 1995, before the land use change tax was

ever assessed. The board held that the abatement requests for lots 15-5 and 15-7 were premature and thus not perfected because the petitioner did not comply with RSA 76:16, :16-a (Supp. 1996), which requires aggrieved taxpayers to apply for an abatement "by March 1, *following the date of notice of tax. . . .*" (Emphasis added.) The petitioner never filed an abatement request on either lot after receiving the land use change tax assessments. The statutory deadlines for requesting a tax abatement under RSA chapter 76 and its predecessor have historically been strictly enforced, *see, e.g., Larkin v. Portsmouth*, 59 N.H. 26, 26 (1879), and failure to timely submit an appeal is fatal regardless of accident, mistake, or misfortune, *see Turetsky*, 118 N.H. at 25, 382 A.2d at 377. Therefore, the board properly refused to consider requests for tax abatements that were not timely filed with the town. *See Thayer v. State Tax Comm'n*, 113 N.H. 113, 115, 302 A.2d 824, 825 (1973).

## II

The petitioner next challenges the town's imposition of a separate land use change tax on each lot in the subdivision. It argues that in light of our opinions interpreting RSA 79-A:7 and Rule 301.05, lots within the subdivision should have been subject to a single tax at the time construction began on the access road serving the subdivision. *See* RSA 79-A:7, V(a) (1991) (amended 1991); N.H. ADMIN. RULES, Cub 301.05.

"This court is the final arbiter of the intent of the legislature as expressed in the words of [a] statute. When construing [its] meaning . . . we first examine the language found in the statute, and where possible, we ascribe the plain and ordinary meanings to words used." *Appeal of N.H. Dep't of Transportation*, 144 N.H. 555, 556, 744 A.2d 1128, 1129 (1999) (quotation and citation omitted). Furthermore, when examining statutory language, we construe all parts of a statute together to effectuate its overall purpose and to avoid an absurd or unjust result. *See Doggett v. Town of North Hampton*, 138 N.H. 744, 746, 645 A.2d 673, 674-75 (1994).

The purpose of RSA chapter 79-A is "to encourage the preservation of open space [and] to prevent the loss of open space due to property taxation at values incompatible with open space usage." RSA 79-A:1 (Supp. 1996). To effectuate this purpose, farm, forest, or unproductive land of ten acres or more, *see* N.H. ADMIN. RULES, Cub 304.01, may be taxed at its present use, rather than at its highest and best use, *see* RSA 79-A:5 (Supp. 1996). Land that has enjoyed the benefit of current use taxation is subject to a land use

change tax of ten percent when it changes in use, and thus no longer qualifies for open space assessment. *See* RSA 79-A:7, I (Supp. 1996).

Before RSA chapter 79-A was amended in 1991, taxpayers could remove all lots in an approved or unapproved subdivision from current use merely by beginning "actual construction . . . on the site [by] causing physical changes in the earth . . . ." RSA 79-A:7, IV(a) (1991); *see Appeal of Town of Peterborough*, 120 N.H. 325, 327, 414 A.2d 1292, 1293 (1980); *cf. Frost v. Town of Candia*, 118 N.H. 923, 924, 396 A.2d 336, 337 (1978). Such activity could include building a road, installing water, sewer, or other utilities, and excavating or grading the site. RSA 79-A:7, IV(a).

The 1991 amendments, however, changed the rules on current use disqualification. *See* RSA 79-A:7, V (Supp. 1995). For unapproved subdivisions, "only the number of acres on which an actual physical change [takes] place [are] subject to [a] land use change tax . . . ." RSA 79-A:7, V. For approved subdivisions, "all lots or building sites, including roads and utilities" are removed from current use as follows:

> When a road is constructed or other utilities installed pursuant to a development plan which has received all necessary local, state or federal approvals, all lots or building sites, including roads and utilities, shown on the plan and served by such road or utilities shall be considered changed in use . . . .

RSA 79-A:7, V(a) (Supp. 1995).

Lot-by-lot assessment, however, is permitted in approved subdivisions which otherwise qualify for immediate removal of all qualified lots in those instances where

> [a] lot or site, or combination of adjacent lots or sites under the same ownership, [is] large enough to remain qualified for current use assessment under the completed development plan . . . .

*Id.* When these conditions are met, lots or sites are not immediately removed from current use when road construction or utility installation begins. Such is the case before us. Van Lunen began constructing the access road and a portion of the driveway pursuant to an approved development plan in August 1995. At that time all lots in the development were under common ownership, and the town does not challenge the board's implicit finding that all lots were served by the road. The subdivision, however, had contiguous lots with combined acreage of more than ten acres once the land on

which the road construction occurred was disqualified. Therefore, the town was entitled to impose the land use change tax on a lot-by-lot basis as disqualifying events occurred for each individual lot. *See* RSA 79-A:7, V(a).

■ The petitioner argues that all lots in the subdivision should have come out of current use when it began construction on the road because the subdivision contained only individual lots of less than ten acres. This argument, however, ignores the plain language of the statute, which dictates that adjacent lots under the same ownership totaling more than ten acres remain in current use until each lot is disqualified. *See* RSA 79-A:7, V(a). Moreover, the petitioner's contention that the interpretation of chapter 79-A articulated in *Appeal of Town of Hollis*, 126 N.H. 230, 490 A.2d 775, and *Appeal of Town of Peterborough*, 120 N.H. 325, 414 A.2d 1292, should guide our interpretation of RSA 79-A:7, IV and V is without merit, as the cases were decided prior to the 1991 amendments that govern this case.

Finally, the petitioner argues that the statute does not require it to secure *all* relevant permits to fall within the approved subdivision exception under RSA 79-A:7, V(a). Because we find that this case does not fall within that exception, we need not address the argument.

### III

Finally, the petitioner argues that the board incorrectly applied New Hampshire Administrative Rules, Cub 308.01 (effective Feb. 25, 1993; amended Mar. 29, 1997) (Rule 308.01) in valuing his land for land use change tax purposes. Specifically, the petitioner asserts that if a lot-by-lot release from current use is permitted, the board should not have enhanced the value of the lots to reflect the added value associated with the road before assessing the land use change tax.

Rule 308.01 provides:

(a) For purposes of this part, the full and true value of the land, as referenced in RSA 79-A:7, I, shall be based on the highest and best use of the land as of the date the actual physical change was begun.

(b) In determining the full and true value of the land, the assessors or selectmen shall not include the value of any betterment to the land, implemented in conjunction with the change in use, including the installation of road paving, water lines, sewage lines, or other utility lines.

Our review of the board's action is limited to questions of law. RSA 79-A:9, VI (1991).

■ The plain meaning of the rule directs that the value of any betterment to the land not be included in determining the land's full and true value when it is removed from current use. N.H. ADMIN. RULES, Cub 308.01(b). A common road or utility in a subdivision constitutes a betterment which enhances the value of all lots in the subdivision. Accordingly, we hold that the value of a common betterment cannot be included in determining the value of each lot in a subdivision as it is removed from current use.

The town contends that the 1997 amendments to Rule 308.01 clarified that the value of betterments be deducted only from the land on which they are constructed. The new section, as amended, provides:

> (b) In determining the true and full value of the land *being disqualified, in accordance with RSA 79-A:7* . . . the assessors or selectmen shall not include the value of any betterment to the land, implemented in conjunction with the change in use, including the installation of road paving, water lines, sewage lines, or other utility lines.

N.H. ADMIN. RULES, Cub 308.01 (effective Mar. 29, 1997) (emphasis added). We fail to see how the added language alters the plain meaning of the provision, which requires that the value of *any* betterment to the land *being disqualified* not be included in the land's value for purposes of assessing the land use change tax. *See id.*

We disagree with the town's final argument that the statements of current use board members regarding their interpretation of rules "are of great and . . . controlling significance." To the contrary, rules are enforced in a manner consistent with their plain meaning. *Cf. Hansel v. City of Keene*, 138 N.H. 99, 104, 634 A.2d 1351, 1354 (1993) (doctrine of administrative gloss does not apply where administrative rule is not ambiguous).

Because the board enhanced the value of each lot with the common betterment of the road, we reverse and remand to the board for further proceedings consistent with this opinion.

*Affirmed in part; reversed in part; and remanded.*

NADEAU, J., did not sit; the others concurred.