IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

MARICOPA COUNTY, *Petitioner*,

*v.*

THE HONORABLE DANIELLE J. VIOLA, Judge of the SUPERIOR
COURT OF THE STATE OF ARIZONA, in and for the ARIZONA TAX
COURT, *Respondent Judge*,

EL RANCHO AFFORDABLE HOUSING, LP, and EL RANCHO
AFFORDABLE HOUSING II, LP, *Real Parties in Interest*,

NORTHERN GARDENS/PHOENIX, LP, *Real Party in Interest/Intervenor*.

No. 1 CA-SA 21-0023
FILED 05-20-2021
AMENDED PER ORDER FILED 05-20-2021

Special Action Appeal from the Arizona Tax Court
No. TX2017-000566
The Honorable Danielle J. Viola, Judge

**JURISDICTION ACCEPTED; RELIEF DENIED**

COUNSEL

Helms, Livesay & Worthington, Ltd., Mesa
By Roberta S. Livesay, Joshua W. Carden
*Counsel for Petitioner*

Frazer Ryan Goldberg & Arnold, L.L.P., Phoenix
By Douglas S. John
*Counsel for Real Parties in Interest El Rancho Affordable Housing, LP and El Rancho Affordable Housing II, LP*

Quarles & Brady, LLP, Phoenix
By Dawn R. Gabel, Jared Wayne Miller
*Co-Counsel for Real Party in Interest/Intervenor Northern Gardens/Phoenix, LP*

Dickinson Wright, PLLC, Phoenix
By Bennett Evan Cooper
*Co-Counsel for Real Party in Interest/Intervenor Northern Gardens/Phoenix, LP*

---

## OPINION

Judge Maria Elena Cruz delivered the opinion of the Court, in which Presiding Judge Jennifer M. Perkins and Judge Randall M. Howe joined.

---

**C R U Z**, Judge:

¶1        Maricopa County's petition for special action asks us to overturn the approach the tax court adopted in *Cottonwood Affordable Housing v. Yavapai County*, 205 Ariz. 427 (Ariz. Tax Ct. 2003), to valuing low-income housing.  Affirming *Cottonwood*, we agree with the tax court that assessors must use actual rents charged when they determine the full cash value of low-income housing tax credit ("LIHTC") properties for taxation purposes.  For that reason, we accept jurisdiction but deny relief.

### FACTUAL AND PROCEDURAL HISTORY

¶2        Congress created the LIHTC program to encourage construction, rehabilitation, and acquisition of affordable housing for low-income households.  The program, administered by the U.S. Treasury under 26 United States Code ("U.S.C.") section 42, allows states to issue federal tax credits to apartment owners in exchange for thirty-year restrictions on the amount of rent they may charge tenants.  The program requires a Land Use Restrictive Agreement to be recorded against a property to bind the current owner and any subsequent owners.  The tax credits are granted at the beginning of a project and made available for a

2

ten-year period, and an owner that fails to abide by the restrictions must reimburse the Treasury for any credits it has used.

¶3        The Arizona Department of Housing ("ADOH") administers the program in Arizona.  The ADOH establishes the maximum rent an owner may charge based on tenants' incomes as a percentage of the Area Median Gross Income ("AMGI").  For an apartment complex to be eligible, either 20% or more of the units must be occupied by households with incomes at or below the AMGI, or 40% or more of the units must be occupied by households with incomes at or below 60% of the AMGI.

¶4        The Arizona Department of Revenue ("ADOR") issued guidelines (the "Guidelines") for county assessors to use in valuing LIHTC properties for tax purposes.  The Guidelines instruct assessors to value the LIHTC properties based on the market rent charged by "conventional" apartment complexes, without regard to the rent restrictions that encumber LIHTC properties.

¶5        Using ADOR's valuation methodology, the Maricopa County assessor valued one of the LIHTC apartment complexes at issue here, El Rancho Affordable Housing, LP ("El Rancho") at $4,620,000.  El Rancho filed a complaint in the tax court, seeking to reduce the full cash value to $1,300,000, a valuation calculated based on the complex's actual restricted rental rates.  Maricopa County filed a motion asking the court to enter an order declaring that LIHTC properties must be valued for property tax purposes using market rents charged by conventional complexes.

¶6        The tax court denied Maricopa County's motion and held that an "LIHTC property [is] to be valued using restricted as opposed to market rents to achieve a full cash value," citing *Cottonwood*, 205 Ariz. at 430 ("the restrictions imposed under the LIHTC program . . . must be taken into account" in valuing property).  Maricopa County then filed this special action petition, and two other LIHTC properties moved to intervene as real parties in interest: El Rancho Affordable Housing II, LP ("El Rancho II") and Northern Gardens/Phoenix, LP ("Northern Gardens").  El Rancho, El Rancho II, and Northern Gardens (collectively, the "Apartment Complexes") all argue their full cash values should be calculated based on their actual restricted rents.

## SPECIAL ACTION JURISDICTION

¶7        Special action review is generally appropriate when there is no "equally plain, speedy, and adequate remedy by appeal."  Ariz. R.P. Spec. Act. 1(a); *see generally Sw. Gas Corp. v. Irwin*, 229 Ariz. 198, 201, ¶¶ 5-7

(App. 2012). Our decision to accept special action jurisdiction is discretionary. *State v. Superior Court (Morgan)*, 237 Ariz. 419, 421, ¶ 5 (App. 2015). Acceptance of special action jurisdiction is "appropriate in matters of statewide importance, issues of first impression, cases involving purely legal questions, or issues that are likely to arise again." *State v. Superior Court (Landeros)*, 203 Ariz. 46, 47, ¶ 4 (App. 2002).

¶8 Here, the issue the petition raises is a pure question of law and is of statewide importance. Maricopa County notes that there are at least twenty-five similar cases pending in the tax court. Accordingly, we accept special action jurisdiction.

## DISCUSSION

¶9 For tax purposes, Arizona values property at its "full cash value." *Bus. Realty of Ariz., Inc. v. Maricopa County*, 181 Ariz. 551, 553 (1995). "Full cash value" generally means "fair market value," which our supreme court has defined as "that amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." *Id.* (internal quotation marks and citation omitted). As prescribed by statute, "[c]urrent usage shall be included in the formula" used to determine a property's full cash value. Arizona Revised Statutes ("A.R.S.") section 42-11054(C)(1).

¶10 The legislature directed ADOR to create "guidelines for applying standard appraisal methods and techniques" for ADOR and county assessors to determine the valuation of property. A.R.S. § 42-11054(A)(1). ADOR's guidelines require assessors to value LIHTC apartment complexes as if they are conventional apartment complexes that charge market rents because they are not subject to LIHTC restrictions.[1] For nearly twenty years, however, the tax court has maintained that the ADOR valuation method, which disregards the deed restrictions that limit rents that may be charged by an LIHTC property, "will not result in a determination of fair market value for" such a property. *Cottonwood*, 205 Ariz. at 430.

---

[1] The Guidelines in effect when the tax court ruled in this case were issued in 1998; ADOR issued revised Guidelines in November 2020. *See* https://azdor.gov/sites/default/files/media/PROPERTY_SubsidizedHo usingValuation.pdf. As relevant here, the 2020 revision made no substantive change to the 1998 Guidelines.

¶11        Maricopa County contends we must defer to the Guidelines because an administrative agency's interpretation of a statute is presumed correct and lawful.  Maricopa County further argues that the legislature's failure to amend the valuation statutes to override the Guidelines since the tax court issued the *Cottonwood* decision in 2003 shows it approves of the Guidelines.  The Guidelines, however, are just that, guidelines, not formal regulations, and were created for use by assessors.  For that reason, the legislature's silence about the validity of the Guidelines post-*Cottonwood* lends little support to the inference that it approves them without reservation.  Further, while courts may consider an agency's interpretation of a statute it is authorized to implement, the agency's interpretation is not binding legal authority and cannot be inconsistent with statutory provisions.  *See Cent. Citrus Co. v. Ariz. Dep't of Revenue*, 157 Ariz. 562, 565-66 (App. 1988); *Stewart Title & Tr. of Tucson v. Pima County*, 156 Ariz. 236, 243 (App. 1987); *Thomas & King, Inc. v. City of Phoenix*, 208 Ariz. 203, 206, ¶ 8 (App. 2004); *cf.* A.R.S. § 12-910(E) (court reviewing final administrative decision owes no deference to agency's interpretation of statute).

¶12        As noted above, § 42-11054 requires that a property's "current usage" be "included in the formula for reaching a determination of full cash value" of the property.  A.R.S. § 42-11054(C)(1).  They are low-income complexes with restrictions on the rent that may be charged and the incomes and tenants who may occupy them.  Most significantly, LIHTC property rental prices are set below the market rates of conventional housing.  Failing to recognize the "current use" of LIHTC projects as low-income complexes would require assessors to value them at an amount far greater than their actual market value in violation of the relevant statutes.  *See supra*, ¶ 9 (fair market value is "that amount at which property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts").  Arizona law requires that low-income properties be valued as low-income properties, not as ordinary properties.

¶13        As the tax court in *Cottonwood* stated, the long-term rent "restrictions imposed under the LIHTC program have a direct and immediate [e]ffect upon marketability."  205 Ariz. at 430.  The court further noted:

> A willing buyer, knowing that there is a restriction as to the amount of rent that can be charged, would pay less for a low income housing project than for a regular commercial apartment complex.  This property should not be valued as though a buyer would not consider the restrictions.  A

valuation for an LIHTC project, determined under any of the standard appraisal methods, that does not take the deed restrictions into account will not result in a determination of fair market value for that property.

*Id.* We agree.

**¶14**        Maricopa County cites *Recreation Centers of Sun City, Inc. v. Maricopa County*, 162 Ariz. 281 (1989), but that case does not require a different outcome. *Recreation Centers* involved the valuation of a non-profit recreation center owned and operated by a homeowner's association for the benefit of its members. *Recreation Centers*, 162 Ariz. at 283. The supreme court noted there were two deed restrictions at issue: "one that requires the owner to operate the facility on a nonprofit basis for the benefit of [the] homeowners, and one that limits the use of the property to recreational purposes." *Id.* at 287. The property owner argued that the non-profit restriction must be considered in valuing the property because it rendered the property valueless for tax purposes. *Id.* at 284, 288. The supreme court, however, disagreed, reasoning that the restriction did "not impact the type of use to which the property may be put" and did not destroy the property's value, but instead effectively divided the value of the property between the owner and those who had the right to use it. *Id.* at 288-90.

**¶15**        The court came to a different conclusion as to the restriction requiring the property be used for recreation purposes. It held that restriction must be considered in the valuation process because it did affect the value of the property:

> Just as with zoning and subdivision restrictions that limit the use of land, the recreational use restriction has an undoubted effect on value, whether the value be measured by any appraisal method. The property cannot be valued as if it were property to be used for residences, apartments, retail stores, or industry; the land is not and cannot be so used even though it may be now properly located and zoned. The limitation on use does not divide value between those who have the right to use; it limits the value in use of all users.

*Id.* at 290 (citation omitted). Here, the LIHTC restrictions do not just restrict rental income, they restrict an owner's use of the property. An LIHTC property cannot be valued as if it were a conventional apartment complex because it is not and cannot be used as such. The "use" of an LIHTC property is not simply that of a conventional apartment complex. The

restrictions subject LIHTC properties to continuing government mandates that impose operational and compliance costs, periodic monitoring, on-site inspections, and compliance reviews. *See* Arizona Department of Housing Compliance Manual for Low Income Housing Tax Credit Program (2019).[2] The restrictions also limit who can live in LIHTC properties to those with a certain income or who meet other classifications (i.e., homeless, mentally ill, domestic violence victims, physically disabled). *See id.*; 26 U.S.C. § 42. Just as in *Recreation Centers*, the deed restrictions requiring the properties be used as LIHTC projects must be taken into account to fairly determine the full cash value of the property. A market value approach requires us to consider market value limitations.

¶16 It is an over-simplification to say, as Maricopa County argues, that LIHTC deed restrictions should not ease an owner's property tax burden because the owner has voluntarily agreed to abide by those restrictions. LIHTC properties are subject to government restrictions designed to make low-income housing available to the public. Maricopa County argues that if LIHTC rent restrictions were allowed to drive the value of an apartment complex, without also taking into account the associated tax credits, the result would be the same as if a "savvy apartment owner" set an "artificially-low" rent, but at the same time required tenants to spend a minimum amount at an on-site commissary, so that the shopping requirement effectively supplemented the rent. But the County confuses "artificial" rates with "actual" rates. LIHTC property owners cannot manipulate rental rates; the rates are set by the ADOH, and if the property owner is not in compliance, the complex loses its LIHTC status, and the owner must reimburse the government for any tax credits it has taken.

¶17 Further, contrary to Maricopa County's contention, it would not be more cumbersome or overly difficult for the assessor to consider the restrictions on the LIHTC properties when valuing those properties. At least in the case of El Rancho, the assessor valued the property using both the market rent charged by conventional complexes and the actual income generated by El Rancho. Valuing an LIHTC property based on actual income generated by the restricted rents is potentially simpler than valuing a property based upon a theoretical market rental rate. And in situations where a newly built complex has not yet produced rents, a different and more appropriate valuation approach can be used, so long as the LIHTC restrictions are taken into account (e.g., valuation derived from sales of or income generated by other comparable LIHTC properties). *See Bus. Realty*

---

[2] *See* https://housing.az.gov/sites/default/files/documents/files/2019-Compliance-Manual.pdf.

*of Ariz.*, 181 Ariz. at 553-54 (recognizing "three common appraisal approaches" to determining market value, "capitalizing the income stream, estimating replacement cost less depreciation, and estimating market value by comparable sales"). Simply put, assessors should treat LIHTC properties differently from conventional complexes because they are different.

**¶18**        Our opinion is in line with a majority of jurisdictions that have decided this issue and similarly allowed or required the consideration of rental restrictions on low-income housing projects in property tax valuations.[3]

---

[3]        *See Horan v. Kenai Peninsula Borough Bd. of Equalization*, 247 P.3d 990, 998-99 (Ala. 2011); *Nutmeg Hous. Dev. Corp. v. Town of Colchester*, 151 A.3d 358, 361-62, 366 (Conn. 2016); *Holly Ridge Ltd. P'ship v. Pritchett*, 936 So.2d 694, 697-98 (Fla. Dist. Ct. App. 2006); *Heron Lake II Apartments, LP v. Lowndes Cnty. Bd. of Tax Assessors*, 833 S.E.2d 528, 534-37 (Ga. 2019); *Greenfield Vill. Apartments, L.P. v. Ada County*, 938 P.2d 1245, 1248 (Idaho 1997); *Kankakee Cnty. Bd. of Rev. v. Prop. Tax Appeal Bd.*, 544 N.E.2d 762, 768-69 (Ill. 1989); *In re Ottawa Hous. Ass'n, L.P.*, 10 P.3d 777, 778-80 (Kan. Ct. App. 2000); *Williams v. The Muses, Ltd. 1*, 203 So.3d 558, 568, 575-577 (La. Ct. App. 2016); *Supervisor of Assessments of Baltimore City v. Har Sinai W. Corp.*, 622 A.2d 786, 795-97 (Md. Ct. Spec. App. 1993); *Glenridge Dev. Co. v. City of Augusta*, 662 A.2d 928, 931-32 (Me. 1995); *Cmty. Dev. Co. of Gardner v. Bd. of Assessors of Gardner*, 385 N.E.2d 1376, 1378-79 (Mass. 1979); *Meadowlanes Ltd. Dividend Hous, Ass'n v. City of Holland*, 473 N.W.2d 636, 648-49 (Mich. 1991); *Willow Bend Ests., LLC v. Humphreys Cnty. Bd. of Supervisors*, 166 So.3d 494, 496-97 (Miss. 2013); *Tibbs v. Poplar Bluff Assocs. I, L.P.*, 599 S.W.3d 1, 12 (Mo. Ct. App. 2020); *Schuyler Apartment Partners, LLC v. Colfax Cnty. Bd. of Equalization*, 783 N.W.2d 587, 590-92 (Neb. 2010); *Steele v. Town of Allenstown*, 471 A.2d 1179, 1181-82 (N.H. 1984); *Penns Grove Gardens Ltd. v. Penns Grove Borough*, 18 N.J. Tax 253, 263-65 (N.J. Tax Ct. 1999); *Woda Ivy Glen Ltd. P'ship v. Fayette Cnty. Bd. of Revision*, 902 N.E.2d 984, 989-93, ¶¶ 19-30 (Ohio 2009); *Bayridge Assocs. Ltd. P'ship v. Dep't of Revenue*, 892 P.2d 1002, 1005 (Or. 1995); *Church St. Assocs. v. County of Clinton*, 959 A.2d 490, 494 (Pa. Commw. Ct. 2008); *Town Square Ltd. P'ship v. Clay Cnty. Bd. of Equalization*, 704 N.W.2d 896, 902-03, ¶¶ 17-19 (S.D. 2005); *Spring Hill, L.P. v. Tenn. State Bd. of Equalization*, M2001-02683-COA-R3-CV, 2003 WL 23099679, at *13-14 (Tenn. Ct. App. Dec. 31, 2003); *Alta Pac. Assocs. v. Utah State Tax Comm'n*, 931 P.2d 103, 115-16 (Utah 1997); *Cascade Ct. Ltd. P'ship v. Noble*, 20 P.3d 997, 1001-02 (Wash. Ct. App. 2001); *Stone Brooke Ltd. P'ship v. Sisinni*, 688 S.E.2d

**¶19**        We approve of the tax court's holding in *Cottonwood* that, regardless of the valuation method used, an assessor must take the rent restrictions of an LIHTC property into account in determining the fair market value for that property. *See Cottonwood*, 205 Ariz. at 430.

## CONCLUSION

**¶20**        For the foregoing reasons we accept jurisdiction but deny relief.



AMY M. WOOD • Clerk of the Court
FILED:        JT

---

300, 314 (W. Va. 2009); *Regency W. Apartments LLC v. City of Racine*, 888 N.W.2d 611, 620, ¶¶ 36-39 (Wis. 2016); *see also* Cal. Rev. & Tax. Code § 402.1(a)(10)(B) and (11)(A)(ii), (iii); 44 R.I. Gen. Laws Ann. § 44-5-13.11; Vt. Stat. Ann. tit. 32 § 3481(1)(A)-(B).